EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL SANTIAGO RODRÍGUEZ, P. I., FRANCISCO GONZÁLEZ, P. I., y ÁNGEL L. RODRÍGUEZ, P. I., acusados y apelantes.

Número 15599.

*Sometido:* 8 de marzo de 1954. *Resuelto:* 14 de septiembre de 1955.

*Guillermo S. Pierluisi* y *M. Orraca Torres,* abogados de los apelantes; *Hon. Secretario de Justicia José Trías Monge* y *Jaime García Blanco, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Se trata de un caso de asesinato en segundo grado seguido contra tres miembros de la Policía Insular de Puerto Rico, a quienes se les acusa de haber atacado con sus revólveres de reglamento al ser humano Ramón Vargas Moreno, haciéndole varios disparos en distintas partes del cuerpo, a consecuencia directa de cuyas heridas falleció dicho Ramón Vargas Moreno. El caso se vió ante el jurado de la Sala de Bayamón del Tribunal Superior de Puerto Rico, y los acusados declarados culpables de un delito de homicidio.

Contra la sentencia dictada por la ilustrada Sala sentenciadora, los apelantes señalan la comisión de los siguientes errores:

"PRIMER ERROR:

"Que el tribunal a quo cometió error al trasmitir las siguientes instrucciones a los señores del Jurado:

"*a*) Los señores del jurado podrán formar juicio y llegar a una conclusión en cuanto a si el acusado Santiago, como dice la ley, en primer lugar si se había cometido un *felony,* y si Santiago al momento de perseguir e intentar arrestar, y tratar de arrestar al interfecto, como dice la ley, tenía motivos racionales para creer que el interfecto lo había cometido. (Instrucciones de la Corte, págs. 558 a la 559, de la T. E.)

"*b*) La corte les instruyó además que un policía es un oficial de orden público. Que puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin, o puede, sin una orden de arresto, detener a una persona, en los casos en que

la corte les leyó al jurado, o sea, por un delito público cometido, o que se ha intentado cometer, en su presencia, que puede arrestar a la persona sin mandamiento y sin orden. Cuando en realidad se ha cometido *felony,* delito muy grave, y el funcionario tiene motivos racionales para creer que la persona arrestada lo ha cometido. En virtud de denuncia fundada en motivos racionales, de la perpetración de un *felony* (delito muy grave) por la persona arrestada.

"Así un policía insular está facultado para arrestar a cualquier hora, del día o de la noche, a una persona que haya cometido un delito público en su presencia, ya sea este delito un delito grave, *felony,* o ya sea un delito menos grave, *misdemeanor,* sin necesidad de un mandamiento de arresto. (Instrucciones de la Corte, págs. 562 y 563, de la T. E.)

"*c*) Un oficial de orden público en ningún caso puede emplear más fuerza que la necesaria para llevar a cabo el arresto de una persona, ni tampoco puede, por consiguiente, en ausencia de una verdadera necesidad, usar su revólver, *ni aun para atemorizar a un fugitivo.* Cuando una persona a ser arrestada se coloca fuera de la ley, ello no justifica que al ser arrestada el policía use más fuerza de la necesaria para efectuar el arresto. (Instrucciones de la Corte, pág. 563, de la T. de E.)

"Segundo Error:

"Que el tribunal a quo cometió error al trasmitir a los caballeros del Jurado las siguientes instrucciones solicitadas por el Fiscal:

"*a*) Que la mera posesión de objetos hurtados en manos de una persona sin otras circunstancias que lo conecten con los hechos de la sustracción, no es suficiente para determinar que la persona en cuya posesión se encontró el objeto hurtado fué la que hizo la sustracción.

"*b*) Que una persona a quien trata de privarse de su libertad por un arresto ilegal o la tentativa de arrestarlo ilegalmente, puede usar aquella fuerza razonable—proporcionada al daño intentado y mantener su libertad.

"*c*) Que una persona que está resistiendo un arresto ilegal, tiene fundamentos razonables para creer y cree que está en inminente peligro de muerte o de recibir grave daño corporal, o que un delito grave va a ser cometido en su persona por un oficial de orden público, y que no hay otro medio aparente y seguro para evitar el daño, él (sic) puede matar al oficial.

"*d*) Cuando un funcionario está practicando un arresto ilegal, la persona a quien trata de arrestar ha resistido su arresto ilegal y ha usado la violencia contra el oficial como consecuencia de la conducta ilegal del funcionario, este funcionario no está justificado en repeler la violencia hasta que él no haya abandonado el arresto ilegal y no puede justificar un homicidio, aunque sea perpetrado en defensa propia porque la necesidad de matar fué creada por un acto ilegal del oficial. (Págs. 6 y 7, Transcripción de Autos.)

"Tercer Error:

"Que el tribunal a quo cometió error al negarse a trasmitir a los caballeros del Jurado, las siguientes instrucciones solicitadas por la defensa:

"*a*) La Corte os instruye, caballeros y damas del jurado, que el homicidio es justificable cuando fuera cometido por funcionarios públicos en los siguientes casos:

"En cumplimiento de una sentencia de tribunal competente.

"Cuando hubiere necesidad de cometerlo para vencer cualquier resistencia que se opusiere a la ejecución de una orden judicial, o en el cumplimiento de cualquiera de sus demás funciones legítimas.

"En el acto de resistir o impedir la tentativa de asesinar o de inferir grave daño corporal a alguna persona, o de cometer algún delito grave (*felony*).

"Cuando se comete al defender una morada, propiedad o persona contra alguno que manifiestamente intente o procure por medio de violencia o sorpresa cometer cualquier delito grave (*felony*), o que violenta, desordenada y tumultuosamente intente o procure penetrar en la morada de otro con el propósito de agredir a alguna persona que se hallare en ella.

"Cuando hubiere necesidad de cometerlo al intentar por medios legítimos la prisión de algún reo de delito grave (*felony*), o al procurar legalmente mantener el orden público.

"*b*) Os instruyo, igualmente, señores y damas del jurado, que un policía insular es un funcionario público, y si al tratar de practicar un arresto, o de cumplir alguna de sus funciones legítimas es resistido, no está obligado a desistir del arresto o ejecución de su función legítima, sino que es su deber proceder adelante en el cumplimiento de su deber y reducir a la obediencia a la persona que intente arrestar, y si ésta se resiste por medio de violencia o usando un arma mortífera, y en actitud o bajo circunstancias suficientes para crear en la mente de una persona razo-

nable de que tal persona estaba en actitud o podía hacer uso inmediato de dicha arma mortal, el policía o el oficial está justificado en disparar primero. Y la corte os instruye, igualmente, que un funcionario público o policía a quien se le opone resistencia al cumplir con una de sus funciones legítimas como lo es un arresto, no está obligado a declinar un combate, sino que puede insistir en ejercer cualquier fuerza que sea razonablemente necesaria, y está justificado en matar a su antagonista bajo circunstancias en que una persona particular no podría hacerlo.

"*c*) Una persona o un funcionario público puede repeler la fuerza con la fuerza en la defensa de la persona, bienes o vida contra uno que abiertamente intenta o trata por medio de la violencia o de la sorpresa, de cometer un determinado delito *misdemeanor o felony,* o cualquiera de ellos, o de causar un grave daño corporal a su persona, y el peligro que justificaría al acusado al cometer el acto imputádole puede ser real o aparente, y el jurado no tiene que considerar si el acusado estaba en verdadero peligro de su vida o propiedad sino solamente si las circunstancias eran tales que indujeran a una persona de mente sana a creer que su persona o sus bienes estaban expuestos a tal peligro; y si racionalmente podía así creerlo y tenía suficiente causa para estimarlo así, y cometió el hecho que se le imputa bajo tal creencia, aun cuando apareciera que el interfecto no estaba armado, ustedes deben absolverlo.

"*d*) Igualmente, señores del jurado, os instruyo que cuando un hombre sin culpa suya se ve de repente atacado de tal modo que su vida o seguridad personal corre peligro inminente, no está obligado a huir o a tomar en consideración el hecho de huir, sino que puede permanecer en su sitio y defenderse hasta el punto de causar la muerte a su agresor si razonablemente era necesario. De modo que aunque el tener que matar todavía tiene que ser debido a una necesidad absoluta, real o aparente se considera como cuestión legal que exista una necesidad absoluta cuando una persona sin culpa se encuentra en tal peligro inminente, y esto es así con más razón cuando se trata de funcionarios públicos que en el cumplimiento de sus deberes tratan de practicar un arresto, pues un funcionario en el cumplimiento de su deber no puede desistir de dicho arresto por razón de que su vida esté en peligro, sino que su deber ante todo es cumplir con sus funciones legítimas. (Págs. 3, 4 y 5, Transcripción de Autos.)

"Cuarto Error:

"El tribunal a quo cometió grave error al impedir, mediante oposición del Fiscal, que la defensa argumentara ante el jurado sobre el hurto del automóvil cometido por el interfecto y que motivó su persecución por los policías acusados, cometiendo grave error la corte al expresarse, a presencia del jurado, en el sentido de que no había prueba de hurto ni que se hubiera cometido un delito de hurto, todo ello a presencia del jurado, motivando una solicitud de 'mistrial' de la defensa, que fué declarada sin lugar por la corte, error éste, cometido por el tribunal a quo que no fué subsanado en modo alguno por la instrucción que diera al jurado, de todo lo cual tomó excepción la defensa. (Véase páginas 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, T. E., sesión del 10 de octubre de 1952, pieza tomada por el taquígrafo Sr. Agustín Cruz Cabrera.) (Véase asimismo, páginas 490, 491, 492 y 493 de la T. E., pieza correspondiente a la sesión en que actuara el taquígrafo, Sr. Juan Amaral.)

"Quinto Error:

"Que el veredicto en este caso es contrario a la prueba, habiendo cometido el jurado manifiesto y grave error en la apreciación de la misma, y sobre todo, al no concluir que se trataba de un homicidio justificado."

 Los hechos de este caso suceden el día 28 de noviembre de 1951, antes de adoptarse nuestra Constitución. Por lo tanto, el estudio que habremos de realizar sobre la legalidad del arresto que culmina en la muerte de la persona que se intentaba arrestar y la justificación del homicidio cometido en el desempeño de un deber público, tendremos que buscarlo en el estado de la Ley prevaleciente a la fecha en que suceden los hechos.

 La cuestión sustancial que plantea el primer error, es, si debe ser el juez que preside la vista, o el jurado al cual se le someten los hechos sobre la causa probable de la comisión de un delito grave, que es la que sirve de base al arresto, quienes determinen la existencia de causa probable. La regla es que la determinación de la causa probable de la comisión del delito grave que produce el arresto, es una cuestión de derecho que debe ser resuelta por el juez que preside la vista, siempre y cuando que no exista conflicto de prueba en cuanto

a los hechos que determinan la causa probable. Si existe tal conflicto, la cuestión de derecho se transforma en una cuestión de hecho que debe ser sometida al jurado. Contrástese el caso de *People* v. *Kilvington*, 37 Pac. 799 (Corte Suprema de California) (*De Haven, Jr.*), (1884), cita precisa a la pág. 800, con el caso de *People* v. *Meléndrez*, 62 Pac. 109, (Corte Suprema de California), (*Smith*), (1900), cita precisa a la pág. 110. Véase además 5 *California Jurisprudence* (2d) 160, (ed. de Bancroft–Whitney Company, de 1952); *Michel* v. *Smith*, 205 Pac. 113 (Corte Suprema de California), (*Waste*), (1922), cita precisa a la pág. 117.

Cuando la prueba en cuanto a si hay causa probable o no hay causa probable de la comisión del delito grave, sea sometida al jurado, por entender el juez que preside la vista que la prueba de la causa probable es conflictiva, al momento de instruir al jurado, el juez que preside la vista debe resumir ambas versiones de la prueba y dar instrucciones en la alternativa cubriendo ambas hipótesis, para que el jurado sepa cómo actuar, según le dé crédito a una versión o a la otra de la prueba. Si los hechos que determinan la causa probable de la comisión de un delito grave son creídos por el jurado, el acusado debe ser considerado como un oficial de la Ley en el desempeño de un deber público; si por el contrario, los hechos que determinan que no existía causa probable de la comisión de un delito grave son creídos por el jurado, el acusado debe ser considerado como el autor de un arresto ilegal: *Aitken* v. *White*, 208 P.2d 788 (Corte de Distrito de Apelaciones de California), (*White*), (1949), cita precisa a las págs. 790–792.

La libertad personal se considera tan necesaria a los supuestos jurídicos de la normalidad de la vida civil, que aun antes de adoptarse nuestra Constitución, las distintas situaciones donde podía ejecutarse un arresto ilegal estaban todas expresamente dispuestas por Ley. El arresto de una persona sin un mandamiento de arresto expedido por una autoridad competente se considera la excepción y no la regla general,

y por tanto, a menos que el arresto se haga siguiendo estrictamente las disposiciones de Ley, se convierte en un arresto ilegal: Alexander—*The Law of Arrest* 427 et seq. (ed. de Dennis & Co., Inc., de 1949).

■ El art. 116 del Código de Enjuiciamiento Criminal de Puerto Rico dispone que cuando no media una orden de arresto expedida por autoridad competente, un oficial del orden público sólo puede arrestar a una persona (1) por un delito grave cometido o que se ha intentado cometer (delito en grado de tentativa), en presencia del oficial del orden público; (2) cuando la persona arrestada ha cometido un delito grave aunque no haya sido en su presencia; (3) cuando en realidad se ha cometido un delito grave y el oficial del orden público tiene motivos racionales para creer que la persona arrestada lo ha cometido; (4) en virtud de denuncia fundada en motivos racionales de la perpetración de un delito grave por la persona arrestada; (5) por la noche, cuando la persona arrestada ha cometido un delito grave.

En cuanto al inciso 1, no hay duda de la legalidad del arresto cuando el delito cometido o que se ha intentado cometer, sea en presencia del oficial del orden público. Hemos resuelto que esta facultad subsiste, aun después de la adopción de nuestra Constitución, que prohibe el arresto antes de la determinación judicial de la causa probable: *Pueblo* v. *Soto*, 77 D.P.R. 206, (*Belaval*), cita precisa a la pág. 214.

■ En cuanto al inciso 2 que dispone que el oficial del orden público puede arrestar a una persona si la misma ha cometido un delito grave aunque no haya sido en su presencia, es conveniente indicar que en tal caso el oficial no interviene en la determinación de causa probable de la comisión del delito grave. La causa probable de la comisión del delito grave ya ha sido determinada por la autoridad competente y el oficial del orden público tiene conocimiento previo de ese hecho cuando procede al arresto. El conocimiento lo adquiere a través de la información que le suple el Estado a los oficiales del orden público para la captura de acusados, convictos o pró-

fugos o a través de la información que recibe de otro oficial del orden público que le muestra el mandamiento de arresto expedido para obtener la detención de determinada persona: 1 Alexander, *The Law of Arrest* 444 (ed. citada).

En cuanto al inciso 3 que dispone que el oficial del orden público podía arrestar a una persona *cuando en realidad se ha cometido un delito grave* y él tiene motivos racionales para creer que la persona arrestada lo ha cometido, la causa probable de la comisión de un delito grave ya ha sido determinada por la autoridad competente. Lo único que se deja a la apreciación del oficial del orden público es la identidad de la persona que lo ha cometido: Alexander, obra y ed. citadas, pág. 441. Hasta qué extremo la identidad de la persona forma parte de la determinación de la causa probable es un enjundioso problema en nuestro nuevo orden constitucional, que anticipamos para deleite de los estudiosos: 1 Alexander, obra y ed. citadas, 441.

En cuanto al inciso 4 que dispone, que el oficial del orden público podrá arrestar a una persona en virtud de denuncia fundada en motivos racionales de la perpetración de un delito grave por la persona arrestada, el oficial del orden público, a su propio riesgo, actúa como una especie de magistrado a los efectos de determinar causa probable. Lo mismo podría decirse del inciso 5, que es una prolongación del inciso 4, a fin de cubrir los arrestos de noche: 1 Alexander, obra y ed. citadas, 443.

Para la resolución del error que estamos estudiando tenemos que determinar, con vista a los hechos del caso, si en realidad hubo conflicto en la prueba en cuanto a los hechos sobre los cuales se basaba la causa probable de la comisión de un delito grave. Hemos examinado minuciosamente las declaraciones de los señores Pedro Tartak, Octavio F. Amy, William Hillyier, Héctor Torres Díaz y Emilio Osorio y tenemos que aceptar la conclusión de la ilustrada Sala sentenciadora de que hubo tal conflicto y por tanto el juez que presidió la vista actuó correctamente al someter al jurado la resolu-

ción del mismo. El conflicto está planteado principalmente entre los testimonios del policía insular señor Emilio Osorio y del señor Héctor Torres Díaz.

Creemos que las instrucciones del juez que presidió la vista cumplió sustancialmente con las dos obligaciones que le impone la ley en este caso: (1) en el resumen de la prueba hizo referencia, aunque sin destacarlas, a las dos versiones que presentaba la prueba en cuanto al posible conocimiento que tuviera el policía acusado señor Rafael Santiago Rodríguez de la comisión de un delito grave y (2) en las instrucciones sobre la aplicación de la ley hizo referencia, aunque sin enfatizarlas, sobre la diferencia entre un arresto ilegal y un arresto legal, que es la que sirve de base al homicidio justificable o excusable cuando se comete en el desempeño de una función pública.

Las instrucciones del juez que presidió la vista en este sentido, fueron las siguientes:

"siendo la teoría de la defensa en este caso la de que estos acusados actuaron en cumplimiento de sus funciones como funcionarios públicos, como policías insulares, mientras trataban o intentaban realizar un arresto, la corte les va a leer también otras disposiciones de ley relativas a arrestos y la forma en que pueden realizarse.

"El art. 114 del Código de Enj. Criminal define un arresto en la siguiente forma:

" 'Un arresto significa poner a una persona bajo custodia en los casos y del modo que la ley autoriza.'

"El art. siguiente, (el 115), dispone:

" 'Se hace un arresto por medio de la restricción efectiva de la libertad de la persona del acusado, o por estar sometido dicho acusado a la custodia de un oficial.'

"Ésa es la manera de realizarse un arresto. Dice además 'El acusado no habrá de estar sujeto a más restricciones que las necesarias para su arresto y detención.'

"Entonces el art. que sigue, (el 116), dispone lo siguiente:

" 'Un oficial de orden público puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin, o puede, sin una orden de arresto, detener a una persona:

" '(1) Por un delito público cometido, o que se intentare cometer, en su presencia.

" '(2) Cuando la persona arrestada ha cometido *felony*, (delito muy grave), aunque no haya sido en su presencia.

" '(3) Cuando en realidad se ha cometido *felony* (delito muy grave), y él tiene motivos racionales para creer que la persona arrestada lo ha cometido.

" '(4) En virtud de denuncia fundada en motivos racionales, de la perpetración de un *felony* (delito muy grave) por la persona arrestada.'

" '(5) Por la noche, cuando haya motivos racionales para creer que la persona arrestada ha cometido un *felony* (delito muy grave).'

"El art. 123 de dicho Código de Enj. Criminal establece también que 'cuando el arresto se haga por un oficial bajo autorización de una orden de arresto, si después que se informe a la persona que ha de ser arrestada de la intención de verificar el arresto, dicha persona huye o resiste violentamente, el oficial puede usar todos los medios necesarios para efectuar el arresto'.

"Los señores del jurado que son los jueces supremos sobre los hechos para apreciar la prueba, ante ustedes ha desfilado prueba en relación con todo lo que ocurrió cuando el acusado Santiago fué requerido por una persona llamada Héctor Torres Díaz para hacer algo y se montó en el carro con esa persona saliendo en persecución de un carro que iba guiado por una persona que resultó luego ser el interfecto; lo que ocurrió después frente al Tiro al Blanco, más allá de Buchanan; y lo que ocurrió después sucesivamente hasta su culminación final; y a base de toda esa prueba, apreciada y considerada por los señores del jurado, los señores del jurado podrán formar juicio y llegar a una conclusión en cuanto a si el acusado Santiago, como dice la ley, en primer lugar si se había cometido un *felony*, y si Santiago al momento de perseguir e intentar arrestar, y tratar de arrestar al interfecto, como dice la ley, tenía motivos racionales para creer que el interfecto lo había cometido.

"También a base de la prueba practicada los señores del jurado formarán su conclusión de hecho, sobre si al perseguir y tratar de arrestar al interfecto, el policía como dice la ley, podía tener conocimiento, o tenía conocimiento, de que la persona a ser arrestada había cometido un delito *felony*, aunque no lo hubiera cometido en la presencia suya, en la presencia de Santiago."

Es cierto que el juez que presidió la vista instruyó a los señores del jurado que "un oficial de orden público en ningún caso puede emplear más fuerza que la necesaria para llevar a cabo el arresto de una persona, ni tampoco puede, por consiguiente, en ausencia de una verdadera necesidad, usar su revólver, ni aun para atemorizar a un fugitivo". Pero tal instrucción, en vez de ser contraria a la Ley de Arrestos forma parte de la doctrina legal aplicable al caso: Véase 1 Alexander, *The Law of Arrest* 481 et seq. (ed. citada) ; como cuestión psicológica, el disparo de unos tiros al aire mientras se persigue a un presunto culpable, en vez de ayudar a su arresto, lo dificulta. Es natural que la persona que trata de resistir un arresto mediante fuga, al saberse perseguido a tiros, desarrolla una mayor aprensión en cuanto al daño físico que puede sufrir si es aprehendido.

El primer error no fué cometido.

██ En cuanto al segundo error en el sentido de haberse transmitido a los señores del jurado ciertas instrucciones, solicitadas por el Ministerio Fiscal, estamos convencidos, que aunque dichas instrucciones fueron solicitadas, el juez que presidió la vista no las transmitió al jurado. Por lo tanto el error no fué cometido.

██ En cuanto al tercer error por haberse negado a transmitir a los señores del jurado ciertas instrucciones solicitadas por la defensa, aunque dichas instrucciones no fueron transmitidas en la forma que interesaba la defensa que se transmitieran, fueron transmitidas sustancialmente con el mismo efecto de ilustración al jurado. Compárese la instrucción solicitada bajo la letra (*a*) de este error con las instrucciones transmitidas por el juez a las págs. 552–554 de la transcripción; la instrucción solicitada bajo la letra (*b*) con las instrucciones transmitidas por el juez a la pág. 563 de la transcripción; la instrucción solicitada bajo la letra (*c*) con las instrucciones transmitidas por el juez a la pág. 561 de la transcripción; la instrucción solicitada bajo la letra (*d*) con

las instrucciones transmitidas por el juez a la misma pág. 561 de la transcripción.

 En cuanto al cuarto error relacionado con no habérsele permitido a la defensa argumentar ante el jurado sobre el hurto del automóvil cometido por el interfecto, la transcripción no deja dudas de que el error inicial del juez, si de error puede calificarse, quedó totalmente subsanado, después de retirarse el jurado para discutirse la cuestión planteada por la defensa. Sobre este incidente, la transcripción demuestra lo siguiente:

"LA CORTE: Señores del jurado; en la tarde de ayer se suscitó una cuestión de derecho que fué discutida estando los señores del jurado presentes y el tribunal dió una decisión en la forma que les leerá el taquígrafo Agustín Cruz Cabrera:

"(El taquígrafo Agustín Cruz Cabrera les lee la decisión del tribunal a los señores del jurado):

"Al expresarse así, la corte realmente les indicó eso, pero que en realidad no había habido ningún testigo que declarara expresamente que ese carro había sido robado o hurtado. Hay, sin embargo, en la prueba una serie de circunstancias en relación con ese vehículo y con la persona que lo poseía, y sobre las circunstancias más o menos que conocen las partes, tanto la defensa como el fiscal, que argumentaron ante los señores del jurado en torno a ellas. Pero serán entonces los señores del jurado los que formarán opinión en definitiva sobre ese extremo, a base de los hechos sobre los cuales han declarado los testigos en relación con ese vehículo.

"¿Están conformes los compañeros de ambas partes?

"DEFENSA: Nosotros tomamos excepción de todos modos porque consideramos que en realidad la instrucción no es lo suficientemente clara.

"LA CORTE: El compañero puede insinuar lo que crea pertinente y si la corte lo cree correcto rectificará.

"DEFENSA: Yo creo que la corte debe aclarar para el récord que la opinión que la corte dió en realidad era errónea y debe rectificar en esa forma.

"LA CORTE: Sí, en cuanto a todo lo que está rectificado y en cuanto a lo que he dicho en la tarde de ayer, se entenderá por los señores del jurado que la decisión del tribunal está rectificada en cuanto a ese particular."

Como cuestión de hecho no había prueba directa del hurto del automóvil, aunque había circunstancias que tendían a indicar que el interfecto podía haber sacado el automóvil la noche anterior con o sin permiso y cuando se dió cuenta que la depositaria se había enterado del choque del automóvil contra el portón, en vez de entregarlo en las condiciones en que estaba, huyó con el automóvil. El juez sometió a la consideración del jurado ambas hipótesis y al así hacerlo procedió correctamente.

El veredicto no resulta contrario a la prueba. Hubo un evidente conflicto en la evidencia no sólo en cuanto a la legalidad del arresto sino también en cuanto a la justificación del homicidio. Los señores del jurado dirimieron el conflicto dentro de la potestad que para tal función les concede la ley. De las dos versiones de la prueba la que resulta más probable es la versión de los hechos que presenta la prueba del Ministerio Fiscal. No podemos por lo tanto intervenir con las conclusiones del jurado.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Sr. Snyder concurre en el resultado.