RAMÓN RODRÍGUEZ LAMBERTY, peticionario y recurrido, *v.* SECRETARIO DE OBRAS PÚBLICAS DE PUERTO RICO, demandado y recurrente.

Número: 39 Resuelto: 22 de octubre de 1962.

J. B. *Fernández Badillo, Procurador General, y Rodolfo Cruz Contreras, Procurador General Auxiliar,* abogados del recurrente; *Práxedes Álvarez Leandri,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

La declaración jurada que prestó el día 28 de enero de 1959 el policía Alfonso C. Alvarado, describe la infracción al Art. 13 de la Ley Núm. 279 de 1946, según enmendada por la Ley Núm. 95 de 29 de junio de 1954 (conducir un automóvil en estado de embriaguez), cometida por el peticionario recurrido, de la siguiente manera: "Que el día 22 de enero de 1959, hora 10:30 P.M. mientras me dirigía en mi automóvil en dirección del pueblo de Salinas hacia el Bo. Lapa del mismo pueblo, al llegar al kilómetro 31 en dirección de Sur a Norte, en dirección contraria corría otro vehículo de luces deslumbrantes y al yo darle el cambio de luz se desvió hacia su izquierda, obstruyéndome mi vía franca, por lo que me ví en la obligación de tirarme hacia la cuneta. Que al notar el desvío deduje que algo sucedía y viré hacia atrás y perseguí el referido automóvil, dándole alcance en la calle Baldorioty de Salinas, P. R. y al solicitar de éste me mostrara su licencia de chófer noté que estaba bajo los efectos de bebidas embriagantes, por lo que requerí de él me acompañara hasta el Cuartel de la Policía de Salinas, P. R. y allí solicité de él se sometiera a la extracción de su sangre, orina o esputo y éste me dijo que sí, pero al llegar al Hospital Municipal de este pueblo, en presencia del Doctor Ventimilla y el policía Félix Rivera Núm. 1312 se negó a someterse a ninguno de los análisis . . .

Que bajo las circunstancias ya indicadas procedí a someter el caso al Hon. Juez de Paz de Santa Isabel, P. R., Sr. Rafael Burgos, quien acusó a Ramón Rodríguez Lamberty del delito de Inf. al Art. 13 . . . de la Ley Núm. 279 de Automóviles y Tránsito . . . con fianza de $300.00 la que no prestó y fue ingresado en la Cárcel de Distrito de Guayama, P. R."

El día 3 de febrero, el Juez Rosendo Quesada Velazco le envió al Secretario de Obras Públicas, la anterior declaración del policía Alfonso C. Alvarado y la licencia número 118385 para conducir automóviles del recurrido Ramón Rodríguez Lamberty, a los fines de suspenderle dicha licencia por haberse negado el recurrido someterse al análisis de las muestras de sangre, orina o saliva para determinar qué grado de alcohol tuviera en la sangre. No obstante, el día 11 de febrero el propio Juez Rosendo Quesada Velazco, declaró al acusado Ramón Rodríguez Lamberty, inocente del delito de guiar en estado de embriaguez, después de recibir el testimonio del doctor Ventinilla, en el sentido, que el acusado no se había negado en presencia suya a dejarse tomar las muestras y que mientras el acusado estuvo en el Hospital Municipal no tenía señal alguna de encontrarse bajo los efectos de bebidas embriagantes. No obstante, el día 12 de febrero de 1959, el Secretario de Obras Públicas le envió a Rodríguez Lamberty una comunicación suspendiéndole su licencia para conducir automóviles.

Habiéndose solicitado vista por el peticionario recurrido, en la forma dispuesta por ley, el Secretario de Obras Públicas, después de recibir la prueba correspondiente, llegó a las siguientes conclusiones: (1) que el oficial del orden público Alfonso C. Alvarado tuvo motivos fundados y razonables para creer que dicho conductor manejaba el referido vehículo bajo los efectos de bebidas alcohólicas; (2) que dicho oficial arrestó al conductor Rodríguez Lamberty y le requirió para la extracción de una muestra de la sangre o la toma de una muestra de la orina; (3) que el conductor Ro-

dríguez Lamberty rehusó dejarse tomar una de las mencionadas muestras. Solicitada y denegada la reconsideración, el peticionario recurrido acudió ante el Tribunal Superior de Puerto Rico, Sala de Ponce, la cual dejó sin efecto la resolución cancelando la licencia de conductor del peticionario recurrido, por los siguientes fundamentos: (a) la orden del Secretario tiene que contener conclusiones de hecho específicas sobre los motivos razonables para arrestar al conductor por estar guiando en estado de embriaguez y la conclusión que a tal efecto hizo el Secretario no es una conclusión de hecho específica sino, más bien, una conclusión de derecho; (b) en la transcripción de la vista no hay prueba sustancial que sostenga la conclusión de hecho que el oficial del orden público tuviera motivos razonables para creer que Rodríguez Lamberty condujera su automóvil en estado de embriaguez; (c) que el arresto del peticionario recurrido fue ilegal y por lo tanto no puede producir efecto jurídico alguno.

En revisión ante nos, el Secretario de Obras Públicas, nos pide revocar la decisión de la ilustrada Sala de Ponce, porque: 1—la conclusión formulada por el Secretario no es una conclusión de derecho sino una conclusión sobre un hecho básico; 2—que en el supuesto que se tratara de una conclusión de derecho, lo procedente hubiera sido devolver el caso a dicho Secretario para que formulara las conclusiones de hecho pertinentes; 3—que la ilustrada Sala sentenciadora, al revisar la orden del Secretario de Obras Públicas, sustituyó su criterio por el de dicho funcionario a pesar de que las conclusiones formuladas por él estaban sostenidas por una prueba sustancial, existiendo una base racional en la prueba para la formulación de dichas conclusiones; 4—que la Sala de Ponce no podía alterar la orden del Secretario de Obras Públicas, a menos que éste hubiera actuado arbitrariamente abusando de su discreción o se hubiera excedido en las facultades que le confiere la ley, no incurriendo en esa falta el Secretario toda vez que la prueba ante sí demostró que el agente del orden público que practicó el arresto tuvo

motivos razonables para creer que dicho conductor estaba. conduciendo el vehículo en estado de embriaguez o bajo los efectos de bebidas embriagantes, por cuanto, conducía el automóvil dando zig-zags, tenía dificultad al hablar y no podía mantenerse erguido; 5—que al conceder la ley una amplia discreción al agente del orden público en la determinación de lo que son "motivos razonables" la misión del Tribunal recurrido al revisar la orden del Secretario de Obras Públicas era considerar si éste había abusado de su discreción al concluir que el agente no había, a su vez, abusado de la suya. ■

1-2: La conclusión del Secretario de Obras Públicas, en el sentido, "que el oficial del orden público Alfonso C. Alvarado tuvo motivos fundados y razonables para creer que dicho conductor manejaba el referido vehículo bajo los efectos de bebidas alcohólicas", no cumple con nuestra regla en cuanto a la validez de una conclusión administrativa, establecida en el caso de *López* v. *Junta de Planificación*, 80 D.P.R. 646 (Saldaña), (1958), cita precisa a la pág. 667 porque no expone "los fundamentos de hecho, refiriéndose tanto a los hechos básicos que estimó probados, luego de resolver cualesquier conflictos en la prueba, como a las inferencias de hecho que en última instancia creyó justificadas". Aparte del escaso valor descriptivo de los hechos envueltos, la conclusión del Secretario es una mera declaración del contenido de la ley a tal respecto. En cuanto a la devolución del caso al Secretario para que éste vuelva a formular nuevas conclusiones, habiéndose enmendado la Ley para que sea el propio magistrado quien determine, al pasar sobre la infracción correspondiente, la suspensión de la licencia—Ley Núm. 94 de 21 de julio de 1961, 9 L.P.R.A. sec. 1044 (Sup. 1961 pág. 287)—de nada valdría pasar ahora sobre dicha cuestión.

3-4: Hay dos cuestiones de hecho envueltas en esta revisión: (1) la legalidad del arresto, sobre la cual pasó la ilustrada Sala de Ponce y (2) la suficiencia de la prueba

sobre si el peticionario recurrido se negó o no se negó a dejarse tomar la prueba de sangre, única de que se le habló a él.

En cuanto a la legalidad del arresto, la constatación que hizo la ilustrada Sala de Ponce es correcta. El "motivo razonable" que tuvo el oficial del orden público que llevó a cabo el arresto, está descrito por él, de la siguiente manera: "Yendo yo de mi trabajo hacia mi casa que radica en el barrio Coco de Salinas, entonces noté que venía un carro en dirección contraria o bien sea del barrio Cocos hacia Salinas, entonces al darle el cambio de luz el carro se desvío hacia el carril izquierdo . . . entonces yo *tuve* que *adentrarme un poco hacia la cuneta.* Cuando estaba llegando cerca de donde ellos estaban volvió y cogió su derecha con dirección a Salinas. Entonces yo lo perseguí en mi carro hasta el pueblo dándole alcance en la calle Baldorioty de Salinas". (t. 14–15) Al explicar el motivo por el cual lo persiguió, el oficial del orden público dió una explicación bastante ingenua: "Al dar el cambio de luz dió un *zig zag* para encima del carro mío, creí que podía suceder algo, creí que podía venir alguna persona enferma dentro del carro, eso fue lo que me movió a mí a ir detrás del carro." (t. 17)

El único zig-zag que dio el carro del detenido hacia el centro de la carretera lo dio antes de cruzarse con el automóvil del oficial que después lo persigue, pues el mismo oficial declara que cuando él "estaba llegando cerca de donde ellos estaban volvió y cogió su derecha." Que el oficial no consideró ese único zig-zg como una posible infracción a la Ley de Automóviles, lo demuestra la razón que da para haber perseguido al peticionario recurrido Rodríguez Lamberty. ▮

La ilustrada Sala de Ponce resolvió que el pequeño episodio descrito por el oficial que practicó el arresto, no era motivo razonable o causa probable para el arresto y nosotros

estamos de acuerdo con dicha conclusión. Hemos resuelto que después de adoptarse nuestra Constitución el oficial del orden público en una situación como ésta, sólo puede arrestar a un ciudadano, sin una orden de arresto expedida por autoridad judicial competente, cuando lo sorprende cometiendo un *delito in fraganti; Pueblo* v. *Soto,* 77 D.P.R. 206 (Belaval) (1954), cita precisa a las págs. 211–212. Siendo el arresto de una persona sin un mandamiento expedido por autoridad competente la excepción y no la regla general, a menos que se haga siguiendo estrictamente las disposiciones de ley, el arresto se convierte en uno ilegal; *Pueblo* v. *Santiago,* 78 D.P.R. 659 (Belaval) (1955), cita precisa a la pág. 666. ■

La prueba sobre la negativa del peticionario recurrido a dejarse tomar la muestra de sangre, lo único que demuestra es que Rodríguez Lamberty estuvo en todo momento dispuesto a que se la tomaran. Los dos únicos testigos desinteresados del caso son el doctor Ventimilla y el señor Vicente Santiago, la persona que acompañaba a Rodríguez Lamberty la noche del arresto. El doctor Ventimilla, testigo del Pueblo, cuyo testimonio reprodujo el Juez Quesada Velazco, negó que el peticionario recurrido rehusara, mientras estuvo en el Hospital Municipal de Salinas, dejarse tomar la muestra de sangre, y declaró que aquella noche el peticionario no se encontraba bajo los efectos de bebidas embriagantes. Describiendo el estado del peticionario recurrido mientras estuvo en el hospital la noche de su arresto, el doctor Ventimilla declaró que estaba tan sobrio, como se veía en el momento de la vista ante el Juez Quesada Velazco. El testigo de la defensa Vicente Santiago declaró, que tanto él como Rodríguez Lamberty, estuvieron conformes en dejarse tomar la prueba. Los indicios fuera del cuadro corriente de la pasión o interés, son bastante elocuentes. Es indudable que Rodríguez Lamberty fue voluntariamente al Hospital Municipal de Sa-

linas a tomarse la muestra; que allí el policía le informó que no se dejara tomar la muestra por ninguna persona que no fuera una enfermera graduada; que al llegar el doctor Ventimilla, el detenido todavía se encuentra en el hospital; que el detenido no es el que habla con el doctor Ventimilla sino el oficial que llevó a cabo el arresto; que al regresar al Cuartel e informar el oficial del orden público que el detenido había rehusado tomarse la prueba de sangre, Rodríguez Lamberty habla con el teniente y con el sargento insistiendo en que se le tome la muestra de sangre. El oficial admite que vio a Rodríguez Lamberty hablando con el teniente y el sargento pero no oyó la conversación. Esto deja en toda su virtualidad la afirmación de Rodríguez Lamberty que él insistió en que se le tomara la muestra de sangre. Es curioso que al describir el estado de Rodríguez Lamberty, el oficial del orden público sólo se limita a decir "que hablaba entrecortado y la manera de pararse y eso", sin hacer ninguna mención a los síntomas más característicos de la embriaguez. Siendo eso así, no podemos concluir, como pretende el Secretario de Obras Públicas que las conclusiones formuladas por él estén sostenidas por la interpretación más racional y justiciera de la prueba que tuvo ante sí. ■

5—La discreción administrativa no es absoluta. Ningún tribunal estaría dispuesto a convertir la discreción administrativa en un término mágico que permita una arbitrariedad. Discreto es el juicio si además de estar apoyado en la razonabilidad, se encuentra sostenido por una clara noción de justicia en su sentido llano.

*Se confirmará la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de Ponce, el día 13 de noviembre de 1959.*