# 98 DTA 181

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I - SAN JUAN**
**PANEL IV**

LUIS R. ORTIZ RIVERA
Recurrido
v.

SGTO. ELIEZER COLON FLORES
Recurrente

GDIA. ORLANDO MACHUCA REYES, GDIA. FRANCISCO ZAPATA RODRIGUEZ
Querellados

Núm. KLRA-97-00157

San Juan, Puerto Rico, a 27 de abril de 1998

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano Acevedo

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente, Sgto. Eliezer Colón Flores *("el Sgto. Colón"),* solicita la revisión judicial de la resolución dictada el 23 de diciembre de 1996 por la Comisión de Investigación, Procesamiento y Apelación *("la Comisión").* Dicha resolución revocó la decisión del Superintendente de la Policía de Puerto Rico al decretar que el Sgto. Colón había violado las disposiciones del artículo 2 (b) de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 172 (b) ▊ y las Reglas 1, 18 y 40 (b) del Reglamento de la Policía [1] e impuso una sanción de suspensión de empleo y sueldo por el término de noventa (90) días. Contra dicha resolución, el Sgto. Colón presentó *"Moción de Reconsideración"* el 31 de enero de 1997; no obstante, la misma fue denegada mediante resolución el 6 de febrero de 1997. Inconforme, el Sgto. Colón presentó el presente recurso alegando, en síntesis, que la decisión de la Comisión, la cual concluye que el Sgto. Colón incurrió en violación a las

disposiciones del artículo 2 (b) de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, y de las Reglas 1, 18, y 40 (b) del Reglamento de la Policía, está fundamentada en unas conclusiones de hechos no sostenidas por la evidencia sustancial en el récord administrativo. A continuación, un breve resumen de hechos.

## I

En horas de la madrugada del 21 de julio de 1994, se personaron un total aproximado de ocho (8) a diez (10) agentes del Distrito Policial de Guayama a la residencia de Luis Ortiz Rivera (Ortiz). Comandaba el grupo el Sgto. Rivera a petición del Sgto. Colón, quien previamente había solicitado apoyo a la Unidad de Saturación debido a la escasez de personal provocado ■ por la ocupación del residencial Carioca de Guayama.

Tocaron a la puerta de la residencia respondiéndole personalmente Ortiz. El Sgto. Rivera le informó a Ortiz que la presencia de los agentes allí obedecía al diligenciamiento de una orden de allanamiento contra su residencia y su automóvil por una alegada violación a la Ley de Armas. Algunos de los agentes permanecieron fuera de la estructura, otros, incluyendo al Sgto. Rivera, penetraron a la residencia de Ortiz. Todos los agentes estaban armados, algunos con armas largas.

Formaba parte del contingente policíaco el Gdia. Orlando Machuca Reyes *("el Gdia. Machuca")*. Este último fue quien ocupó dos armas de fuego pertenecientes a Ortiz, a saber: revólver calibre 357 y una pistola de calibre 9mm, para las cuales Ortiz tenía licencia.

Mientras ocurría el allanamiento, el Sgto. Rivera le preguntó a Ortiz si en su residencia tenía armas ilegales. Ortiz le respondió que tenía armas pero no ilegales. El Gdia. Machuca ocupó las armas mencionadas de la gaveta de una mesa de noche del dormitorio de Ortiz. El Sgto. Rivera le requirió las licencias de ambas armas para verificar su legalidad. Así las cosas, cuando llega el Sgto. Colón a la residencia de Ortiz, el Sgto. Rivera le notifica al Sgto. Colón que todo estaba en orden. Sin embargo, el Gdia. Machuca le indicó al Sgto. Colón que una de las licencias de las armas estaba ilegible, por lo que el Sgto. Colón decidió llamar a la fiscal de turno, la Fiscal Carmen Colón, y explicarle los acontecimientos. La Fiscal Carmen Colón le ordenó al Sgto. Colón que ocupara la armas, que de no haber problemas con las licencias, éstas se devolverían al día siguiente.

A los quince (15) minutos regresó el Sgto. Colón e informó que debía ocupar las armas debido a que no se podía verificar si las mismas eran legales, ya que los documentos de licencia estaban ilegibles. Se ocuparon las armas y fueron llevadas a la Fiscalía de Guayama donde el Fiscal Gierbolini dio instrucciones de que el asunto se refiriera a la Fiscalía de Aibonito, distrito con competencia sobre la materia por tratarse de un operativo realizado en Coamo.

Al día siguiente, 22 de julio de 1994, se personó Ortiz a la Fiscalía de Guayama con su hermano, abogado de profesión, el cual objetó que las armas fueran llevadas a Aibonito. Finalmente, en esa misma fecha, las armas fueron llevadas al Cuartel de Coamo donde se le hizo entrega de las dos armas a Ortiz, incluyendo las licencias.

El 26 de julio de 1994, Ortiz presentó una querella ante la Policía de Puerto Rico contra el Sgto. Colón y los guardias Orlando Machuca Flores y Francisco Zapata Rodríguez alegando que éstos le ocuparon ilegalmente varias armas. Practicada la investigación correspondiente, el Superintendente de la Policía de Puerto Rico ordenó el archivo de la querella al concluir que la prueba no era suficiente para imponer cargo alguno.

Inconforme, Ortiz apeló ante la Comisión. Luego de los trámites de rigor, la Comisión emitió resolución revocando la decisión apelada en cuanto al Sgto. Colón, por entender que había violado las Reglas 18 y 40 (b) del Reglamento de la Policía y el artículo 2 (b) de la Ley. Núm. 32 de 22 de mayo de 1972, según enmendada, e impuso una sanción de suspensión de empleo y sueldo por el término de noventa (90) días. Contra dicho dictamen, el Sgto. Colón presentó el presente recurso.

## II

La Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. 2101 *et seq.*, establece una norma de revisión de los hechos de mucha deferencia a favor de la decisión de la agencia. Dicha ley, en su

sección 2175, dispone que *"las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."*

De este mismo modo, el artículo 3 de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 173, dispone que la revisión de las decisiones de la Comisión estarán limitadas a cuestiones de derecho y a la determinación de si existe o no evidencia sustancial para sostener las conclusiones de hecho de la Comisión.

La revisión judicial de las determinaciones de hechos en todo proceso adjudicativo de naturaleza formal se rige por el principio de evidencia sustancial. La jurisprudencia ha definido el concepto de *"evidencia sustancial"* como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Hilton v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el que el tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión del organismo administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Metropolitana S.E. v. ARPE*, ___ D.P.R. ___ (1995) **95 J.T.S. 39,** pág. 767.

Sabemos que es doctrina firmemente establecida que las determinaciones administrativas merecen gran deferencia por parte de los tribunales, en vista de la vasta experiencia y conocimiento atribuidos a las agencias especializadas. En atención a este principio, los tribunales deben procurar no intervenir en los quehaceres de las agencias administrativas más allá de lo necesario. *Agosto Serrano v. F.S.E.,* ___ D.P.R. ___ (1993), **93 J.T.S. 37,** a la pág. 10510; *Molini v. Negociado,* 115 D.P.R. 183, 188, 189 (1984); *Murphy v. Tribunal,* 103 D.P.R. 692, 699 (1975). Esto no significa, sin embargo, que las determinaciones administrativas estén inmunes a la revisión judicial. *Fuertes v. A.R.P.E.,* ___ D.P.R. ___ ( 1993), **93 J.T.S. 165,** a las págs. 11385-11386. Si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituye un abuso de discreción, o si la agencia hubiese cometido algún error en la aplicación de la ley, esa actuación no sería válida y la deferencia no puede ser obstáculo para la revisión judicial. *Id.* Al igual que es el caso con las determinaciones de hecho de un tribunal de primera instancia, en el caso de las agencias administrativas que ejercen una función adjudicativa *"el arbitrio del juzgador de los hechos es respetable, mas no absoluto",* y *"una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal".* *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987); *Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978). Aceptamos que de ordinario la discreción administrativa es amplia y debe ser respetada por los tribunales. Sin embargo, ello no significa una abdicación en la misión de impartir justicia y, en casos apropiados, corregir cualquier abuso o exceso. *Pueblo v. Sánchez González,* 90 D.P.R. 197, 200 (1964); *Rodríguez v. Srio. de Obras Públicas*, 86 D.P.R. 258, 265 (1962).

De esta manera, si surge del expediente ante consideración del tribunal que la resolución recurrida no está sostenida por evidencia sustancial, está justificado el foro judicial al intervenir con las determinaciones de hecho de organismo administrativo. *Silva Rodríguez v. Administración de Retiro*, ___ D.P.R. ___ (1991), **91 J.T.S. 39,** a la pág. 8543, nota 7; *Chase Manhattan v. Emmanuelli Bauzá,* 111 D.P.R. 708, 712 (1981).

### III
En el caso ante nuestra consideración, hemos examinado el récord cuidadosamente y hemos concluido que la totalidad del récord administrativo no sostiene las determinaciones de hechos llegadas por la Comisión respecto al Sgto. Colón. En la resolución, se señaló, en específico, que el Sgto. Colón: inexplicablemente insistió en ocupar las armas de Ortiz; indujo a error a la Fiscal Carmen Colón; suministró información falsa a ésta; no examinó personalmente la licencia en controversia; actuó maliciosamente al suministrar información falsa; y que sólo habló con la Fiscal Carmen Colón con respecto a una de las armas.

En el presente caso, el récord administrativo consta de la prueba testifical presentada, de la prueba

documental consistente en las declaraciones juradas tomadas al Sr. y Sra. Ortiz, al Sgto. Rivera y al Gdia. Machuca, así como los documentos relacionados con el allanamiento y los informes rendidos al Superintendente de la Policía en el curso de la primera etapa de la querella.

De la totalidad del récord administrativo, surgen los siguientes hechos: como consecuencia de una confidencia anónima en que se vinculaba a Ortiz con el tráfico ilegal de armas de fuego, se asignó al agente Francisco Zapata a prestar vigilancia al negocio de Ortiz. (Exhibit 9k del Apéndice Conjunto, págs. 59-60). El agente Francisco Zapata observó a Ortiz portar un revólver y una pistola niquelada. (Exhibit 9k del Apéndice Conjunto, págs. 59-60). Como consecuencia de estas observaciones, se expidió una orden de allanamiento contra la residencia de Ortiz. (Exhibit 9b del Apéndice Conjunto, págs. 38-39). El allanamiento formó parte de un operativo supervisado por el Sgto. Colón. El Sgto. Colón requirió de la colaboración de la División de Saturación de Guayama, a cargo del Sgto. Rivera. (Exposición Estipulada de la Prueba, pág. 8). En el operativo también participó el Guardia Machuca, quien tuvo bajo su custodia las armas de fuego de Ortiz mientras se practicaba el allanamiento.

El Gdia. Machuca advirtió que *"...las armas que me entregó [Luis Ortiz] eran similares a las vistas por el compañero Zapata en la vigilancia, según dicho en la orden [de allanamiento] y al revisar los documentos [las licencias] pude notar que una de las licencias el número de serie estaba ilegible, ya que el papel estaba roto y sucio en esa parte."* (Exhibit 9j del Apéndice Conjunto, pág. 57).

Surgió una discrepancia entre el Sgto. Rivera y el Gdia. Machuca respecto a la devolución de las armas de fuego. (Exposición Estipulada de la Prueba, pág. 3). En medio de esta discusión, llegó el Sgto. Colón, a quien el Gdia. Machuca le indicó que las armas eran similares a las descritas en la orden de allanamiento y le mostró que una de las licencias estaba ilegible. (Exhibit 9j del Apéndice Conjunto, pág. 57). Como consecuencia de esta situación, el Sgto. Colón procedió a llamar a la fiscal de turno. Esta, ante el cuadro descrito, le ordenó al Sgto. Colón que ocupara las armas para hacer una investigación completa al día siguiente. (Exposición Estipulada de la Prueba, pág. 16).

De la totalidad del récord administrativo, no existe base alguna para concluir que la conducta del Sgto. Colón, durante el registro, fue ilegal o irrazonable, o que éste hizo mal uso o abuso de su autoridad en el desempeño de sus deberes y funciones. Por el contrario, los hechos expresados anteriormente demuestran que el Sgto. Colón estaba facultado para ocupar las armas, ya que actuó de conformidad con las instrucciones de la fiscal de turno y de acuerdo a su propia autoridad frente a un arma cuyo dueño sólo tenía una supuesta licencia de portación que era ilegible.

## IV

Por otro lado, nos parece importante, en el presente caso, el hecho de que Ortiz no presentara en evidencia la licencia que él mostró al Sgto. Rivera, al Gdia. Machuca y al Sgto. Colón.

La Regla 16 de Evidencia, 32 L.P.R.A. Ap. IV, en su inciso (S), dispone que entre las presunciones controvertibles se reconoce *"que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere."* Este inciso pretende ayudar en el proceso de aquilatación de la prueba estableciendo una penalidad a la parte proponente cuando suprime alguna evidencia voluntariamente. Se estima que las partes presentarán toda la prueba que les sea favorable por consideraciones de lógica y conveniencia. Si una parte voluntariamente suprime ofrecer prueba, el tribunal o la agencia adjudicativa debe concluir que la motivación para ello es que la prueba, de haberla ofrecido, le hubiera resultado adversa a dicha parte. *C. Armstrong e Hijos v. Santiago,* 105 D.P.R. 634, 638 (1977), y la conducta de dicha parte debe mirarse con sospecha. *Id.*

En el caso de autos, Ortiz omitió la presentación de la licencia vigente a la fecha del allanamiento. En sustitución, presentó una licencia expedida con fecha posterior al allanamiento, la cual no era pertinente a la controversia planteada. Ante esta omisión voluntaria, se entiende que la licencia que Ortiz mostró a los agentes la noche del allanamiento fue suprimida y durante la vista ante la Comisión, consecuentemente, su conducta le es adversa a su posición. *C. Armstrong E. Hijos, supra.*

## V

Por los fundamentos anteriormente dispuestos, se revoca la resolución recurrida y se desestima la querella.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 181**

**1.** En su parte pertinente, dicho estatuto lee:

*"Se entenderá que ha habido mal uso o abuso de autoridad cuando cualquier funcionario... incurra en cualquiera de los siguientes actos, entre otros:*

*(a)....*

*(b) registros, allanamientos e incautaciones ilegales o irrazonables."*

**2.** El artículo 14, sec. 14.5 (Faltas graves), Reglas 1, 18 y 40 (b) indican:

*"Faltas Graves*

*Regla 1: Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad y negligencia en el desempeño de sus deberes, funciones y responsabilidades.*

*Regla 18: Declarar falsamente o inducir a declarar falsamente a otra persona ante un Magistrado, oficial investigador, organismo judicial o cuasi judicial.*

*Regla 40(b): Registros, allanamientos e incautaciones ilegales o irrazonables."*