918

El Pueblo de Puerto Rico, demandante y apelado, *v.* José Gil de Lamadrid y Harry García Dominicci, acusados y apelantes.

Núm. 14056.—*Sometido:* Enero 10, 1950.   *Resuelto:* Febrero 24, 1950..

*F. Hernández Vargas*, abogado de los apelantes; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo y Fernando Fornaris, Jr., Fiscal Auxiliar*, abogados de El Pueblo, apelado.

*Per Curiam:* Los aquí apelantes fueron convictos de un delito de portar armas y sentenciados a una pena de dos meses de cárcel. En apelación sostienen que la corte inferior cometió error (1) al negarse a suprimir evidencia obtenida mediante persecución, arresto y registro ilegales; (2) al declararlos convictos del delito ya que la propia prueba de El Pueblo demostró que la portación fué incidental y (3) al no imponerles el mínimo de la pena.

La prueba que tuvo ante sí la corte inferior, según correctamente la resume el Fiscal Auxiliar de este Tribunal en su alegato, es la siguiente:

"La prueba del Fiscal consistió en las declaraciones de: *Emilio Torres Pérez,* detective, quien testificó que allá para el 4 de octubre de 1948, mientras se encontraba de servicio en horas de la tarde en la Universidad de Puerto Rico, vió a Harry García Dominicci, José Vázquez Guevara, José Gil de Lamadrid y Celia Josefa Canales reunidos en el Café Universitario con un joven llamado William Colón; que William Colón llevaba un maletín negro; que todas las personas mencionadas abordaron el automóvil tablilla núm. 20730, conducido por José Vázquez Guevara; que en un *jeep* propiedad del Gobierno siguió al mencionado automóvil, el cual salió en dirección a Santurce y al llegar a la Parada 26 subió por la calle del Sagrado Corazón, dió unas vueltas por las calles del Barrio Obrero, y se detuvo en la casa núm. 1928 en la calle Eduardo Conde, donde todos los pasajeros se desmontaron y entraron a la casa, portando William Colón el maletín; que inmediatamente vió al grupo salir por la parte atrás de la casa al patio; que sintió unas detonaciones de armas de fuego, se allegó al patio contiguo a la casa núm. 1928, y observó que José Vázquez Guevara estaba disparando una pistola pequeña de pabón obscuro, calibre 24; que mientras esto ocurría, Harry García Dominicci hacía disparos con un revólver negro, calibre 32, marca Colt, también de pabón obscuro y con un cañón bastante largo; que Vázquez disparó como cuatro o cinco tiros hacia la pared, y entonces le sacó el peine a la pistola, le puso otro y se la dió a José Gil de Lamadrid, quien disparó hacia la pared a un frasco y a un pote de lata que habían puesto sobre unas piedras; que él (el testigo) le dijo a Gil de Lamadrid: 'Qué mala puntería tienes'; que eso se lo dijo desde el patio contiguo a la casa núm. 1928, desde donde él veía a los acusados disparar; que Gil de Lamadrid le devolvió la pistola a Vázquez

Guevara, quien se puso a trastearla y a cargarla de nuevo; que él salió del patio hacia la calle para tratar de comunicarse por radio con su jefe con el fin de explicarle la situación y recibir orientación; que trató de comunicarse con el jefe para explicarle la situación debido a que era en un patio privado que estaban haciendo los disparos y no contaba con la autoridad del dueño ni sabía quién era el dueño de la casa para arrestar esa gente por portar armas; que cuando trataba de comunicarse con el Jefe de la Detective, pasó el Capitán Guillermo Arroyo, Jefe Auxiliar y Ayudante de la Policía Insular, quien le dijo que regresaría dentro de cinco minutos; que después que el Capitán Arroyo se fué, él se quedó pendiente de los movimientos porque seguían disparando, y entonces vió que cesaron los disparos y que Vázquez echó la pistola en el maletín, así como también vió que Harry García Dominicci echó el revólver dentro del mismo maletín y que salieron todos hacia la calle; que entonces, en unión al Cabo Basilio Acosta, le preguntó a ellos que dónde estaban sus licencias para portar armas, a lo cual le respondió Gil de Lamadrid que ellos no tenían arma de clase alguna; que el último en salir de la casa a la acera fué García Dominicci, quien le pasó el maletín a Celia Josefa Canales, quien lo puso dentro del automóvil y se sentó tapándolo con la falda; que el Capitán Arroyo le pidió a la Srta. Canales que se desmontara del automóvil y se incautó del maletín; que al abrir el maletín encontraron dentro las dos armas y notó que el revólver y la pistola estaban tibios; que cuando esto último ocurrió ya todos estaban arrestados; que había oído los disparos antes de entrar al patio contiguo a la casa núm. 1928; que los disparos los oyó mientras estaba en la acera frente a la casa donde estaban los acusados; que desde la calle vió a los acusados disparar; que en aquel momento no vió ningún petardo allí; que las armas las vió primero en manos de los acusados y luego dentro del maletín; que cuando el Capitán Arroyo sacó el maletín del automóvil, éste no estaba cerrado; que no tenían orden de arresto contra ninguno de los del grupo; que a su entender, los acusados no estaban cometiendo otro delito que no fuera el de portar armas; que los jóvenes estaban en una actitud bastante amigable con él; que los acusados aparentemente no se preocuparon cuando lo vieron a él porque continuaron disparando; que el Jefe Arroyo llegó al sitio de los sucesos mientras los que componían el grupo venían saliendo de la casa y en el momento en que él y su acompañante interrogaban a Gil de Lamadrid; que cuando el Jefe Arroyo se incautó del maletín ya todos estaban arrestados.

"*Guillermo Arroyo,* ayudante de la Policía Insular de Puerto Rico, declaró que durante las últimas horas de la tarde del día 4 de octubre de 1948, al llegar a la esquina de las Calles Castro Viñas y Eduardo Conde, un detective lo detuvo y le pidió que lo acompañara a la acera frente a una casa donde estaban José Gil de Lamadrid, Vázquez Guevara, García Dominicci, la Srta. Canales, Irma Viscal y cinco detectives; que el dueño de la casa, Miranda, le mostraba una pistola Mausser calibre 25 a los detectives y les decía que ésa era la única arma que tenía en su casa; que en ese momento, Harry García Dominicci traía del patio de la casa del Sr. Miranda un maletín negro, el cual le entregó a Celia Josefa Canales, y ésta abrió la puerta del carro y precipitadamente echó el maletín dentro; que entonces requirió a la Srta. Canales para que se desmontara del carro, a lo cual ella accedió, abrió el maletín, y encontró dentro una pistola calibre 25, núm. 421580 y un revólver Colt calibre 32, núm. 215475; que entonces procedieron a conducir a los jóvenes al cuartel; que cuando él llegó allí, ya estaban arrestados; que más tarde, como a las 8 de la noche, regresó a casa de Miranda acompañado del Fiscal Gil y en una de las paredes del patio encontraron no menos de 45 impactos de balas completamente recientes, 8 casquillos de pistola calibre 25 y 8 calibre 32, y cinco balas aplastadas por el impacto contra la pared, así como también una caja vacía de balas calibre 25 para pistola; que además encontraron un triquitraque sin disparar, y los restos de un petardo; que no tuvo necesidad de ordenar el arresto de los acusados porque ya estaban arrestados; que la pistola del Sr. Miranda era calibre 25, pero estaba completamente mohosa por dentro, lo cual demostraba que no había sido disparada; que cuando ocuparon la pistola y el revólver en poder de los acusados, dichas armas estaban todavía tibias.

"*Luis Felipe Miranda* declaró que allá para el 4 de octubre de 1948 residía en la calle Eduardo Conde 1928; que al único que conocía desde antes de dicha fecha era a José Gil de Lamadrid; que en la mencionada fecha, como a las 5:30 de la tarde, José Gil de Lamadrid, Harry García Dominicci, José Vázquez Guevara y Celia Josefa Canales estuvieron en su casa; que él los invitó a que pasaran al patio de la casa, mientras él permanecía en la sala atendiendo a otra visita; que mientras estaba en la sala oyó detonaciones, pero no le llamaron la atención; que después de las detonaciones, vió a las personas antes mencionadas salir de su casa; que se percató de que un detective estaba discutiendo con los jóvenes alegando que ellos estaban disparando; que el detective le dijo que los jóvenes estaban tirando en su patio y él le respondió que no era verdad; que vió cuando el Jefe Arroyo sacó un maletín del carro de los muchachos; que su

pistola era una Mausser calibre 25; que más tarde, caída ya la noche estuvieron en su casa el Jefe Arroyo y el Fiscal Gil; que él los invitó a entrar; que Gil le indicó que quería ver el patio, a lo cual él accedió gustoso; que en el patio había blancos y perforaciones; que recogieron casquillos de bala calibre 25 y 30 ó 32 del piso; que hacía como 9 ó 12 meses que él no disparaba allí; que en otras ocasiones Gil de Lamadrid había estado en aquel sitio y había tirado al blanco con un rifle calibre 22 propiedad de él; que no vió que ninguno de los acusados o miembros del grupo entrara el maletín en su casa; que no vió que ninguna de esas personas entrara a su casa con armas; que no vió que llevasen armas encima al salir; que no creía que se estuviese disparando con sus armas porque las mismas no tenían balas; que ningún vecino se ha quejado porque dispare en aquel sitio; que no vió que sacaran las armas del comedor de su casa, donde él las había puesto para enseñárselas a los acusados; que su pistola no estaba cargada, y tenía las balas guardadas en la cómoda de su habitación; que ni él le enseñó las balas a los acusados ni ellos se las pidieron; que en otras ocasiones en que varias personas o él han disparado al blanco, siempre han usado el rifle calibre 22; que él no tiene en su casa ninguna arma calibre 32 ni balas del mismo calibre; que no vió a Harry García Dominicci salir de su casa con un maletín en las manos, porque no le miró las manos.

"La prueba de defensa consistió en el testimonio de: *Basilio Acosta,* Policía Insular, quien declaró que allá para el 4 de octubre de 1948 prestaba servicios especiales en la Universidad de Puerto Rico; que a las cuatro o cinco de esa tarde vió salir a los acusados en unión a otras personas con dirección a Santurce y los siguió en un jeep; que se detuvieron frente a la residencia de Luis Miranda.

"*Lucy García de Torres,* declaró que el 4 de octubre de 1948 vivía en la calle Eduardo Conde núm. 1930, al lado de Luis Felipe Miranda; que en la tarde de dicho día, mientras estaba en su casa, no recuerda que persona alguna le pidiera permiso para entrar al patio; que dicho patio no estaba abierto al público, y tiene una verja y un portón, cuyo portón se cierra con una aldabita; que sintió detonaciones de petardos o tiros; que no sabe de dónde provenían dichas detonaciones ni le causaron temor porque al frente hay motores; que no vió a los detectives entrar, ni vió a ningún detective disparar tiros; que no puede asegurar que el portón estuviera cerrado en ese día.

"*América López,* hija de Lucy García de Torres, declaró que estaba en su casa el día 4 de octubre de 1948; que el portón del patio estaba cerrado con una aldaba; que unos señores abrieron dicho

portón y entraron al patio sin permiso, siendo uno de dichos señores el Policía Emilio Torres Pérez; que detrás de dichos señores entró mucha gente al patio sin pedir permiso; que ella no les dijo que no entraran y permitió que todo el mundo entrara tranquilamente; que ese día sintió detonaciones, y está acostumbrada a oír ruido de motores.

"*José Gil de Lamadrid* declaró que en la tarde del 4 de octubre de 1948 se encontraba en el Café Universitario de Río Piedras; que llegó José Vázquez Guevara, con quien se dirigió a Santurce; que llegaron a casa de Luis Felipe Miranda; que al entrar en dicha casa, el Sr. Miranda no les pudo atender inmediatamente, por lo cual pasaron al patio a esperarlo; que allí en el patio, sintiéndose acosado por la Policía Insular, decidió tratar de prepararse para defender su vida y se puso a disparar con la pistola de Luis Felipe Miranda; que mandó a buscar una caja de balas para dicha pistola."

▮ Argumentando el primer señalamiento de error sostienen los apelantes que fueron objeto de una persecución ilegal por parte de la policía, al ser seguido el automóvil en que ellos, en unión a otras personas, se dirigían desde Río Piedras a la casa de Luis Felipe Miranda, en el Barrio Obrero, en Santurce—para lo cual utilizó la detective dos *jeeps*—sin que ellos hubiesen cometido delito alguno, y sin que tuviere la policía órdenes de arresto contra ellos. El récord no revela, sin embargo, que hubiere habido la más leve interferencia por parte de los agentes de orden público en el viaje de los apelantes desde Río Piedras hasta el Barrio Obrero. Y no vemos la ilegalidad de las actuaciones de la policía al transitar por las calles públicas sin intervenir ni coartar la libertad de los apelantes en su viaje hacia Barrio Obrero.

▮ Sostienen también los apelantes que la policía pudo haberse provisto de una orden para llevar a cabo su arresto, y que al no hacerlo, la evidencia obtenida como consecuencia de dicho arresto era inadmisible. Se refieren a las armas que utilizaban los apelantes para disparar en el patio de la casa de Miranda—un revólver y una pistola—un maletín de cuero dentro del cual conducía dichas armas al salir de la casa de Miranda el apelante García Dominicci, y varios plo-

mos y casquillos de balas. ¿Era necesaria, sin embargo, la orden para proceder al arresto? A nuestro juicio no.

Tanto Gil de Lamadrid como García Dominicci fueron vistos por el detective Torres Pérez portando armas de fuego mientras disparaban en el patio de la casa de Miranda. Mientras esto ocurría no procedió a su arresto—como pudo haberlo hecho—si que esperó hasta que los apelantes terminaran de disparar y salieran a la acera de la calle Eduardo Conde, luego de que ambos depositaran sus armas dentro de un maletín negro que, al salir, llevó consigo García Dominicci. Bajo las circunstancias del caso creemos que el arresto de ambos fué legal, no obstante no haberse verificado mientras portaban el arma y disparaban en el patio de Miranda, ya que el delito fué cometido en presencia de la policía,([1]) y el arresto se llevó a cabo en la primera oportunidad razonable, casi inmediatamente después de cesar los disparos, cuando las circunstancias permitían dicho arresto, sin que se pudiera temer una posible reyerta de la policía y los apelantes. La policía no se apartó de las inmediaciones del sitio de los hechos, ni perdió de vista a los apelantes. Por tanto, no era necesaria una orden de arresto.([2])

Por último sostienen los apelantes que el registro fué ilegal porque el mismo fué practicado por un agente que no presenció los hechos. No tienen razón. Una vez arrestados legalmente, cualquier otro agente de orden público podía verificar el registro; aun un ciudadano particular bajo órdenes o requirimiento de un oficial de orden público.

El otro punto que levantan los apelantes en la discusión del primer error no tiene mérito. Según ellos, no se les informó el delito por el cual se les arrestó. Sin embargo, el récord revela que la policía les pidió sus licencias para portar armas, y al no poder producirlas, se procedió a su arresto, luego de ocuparse las armas.

([1])Artículo 116(1), Código de Enjuiciamiento Criminal.

([2])Cf. *Pueblo* v. *Hernández*, 23 D.P.R. 58; *Yates* v. *State*, 56 S.E. 1017, 9 Ann. Cas. 620; *State* v. *Lewis*, 33 N.E. 405; *Wahl* v. *Walton*, 30 Minn. 506; *Town of Hartford* v. *Davis*, 150 S.E. 141; *Note*, 84 Am. St. Rep. 679, 687.

El segundo error es al efecto de que la prueba de cargo demostró que las portaciones de armas fueron incidentales.

La teoría de portación incidental, basada en que fué otra persona quien les facilitó y pasó las armas a los apelantes dentro del patio de Miranda, no merece seria consideración. El apelante Gil de Lamadrid declaró en el juicio que estando en el patio de Miranda, decidió aprovechar el tiempo en algo, en prepararse para defender su vida, y a ese fin se puso a disparar con la pistola de Miranda, enviando a comprar una caja de balas. (Y mientras él disparaba con la pistola, García Dominicci lo hacía con un revólver.) La teoría de los apelantes no tiene base en la prueba.

Por último, no vemos cómo pueden los apelantes argumentar seriamente que fué error de la corte inferior imponerles a cada uno una pena de dos meses de cárcel.

Corresponde al juez sentenciador ejercitar su discreción en la imposición de la pena. Y en este caso no hallamos que cometiera abuso alguno en el ejercicio de esa discreción, al imponerles menos de la mitad de la pena que apareja el delito por el que fueron convictos.

*Las sentencias apeladas serán confirmadas.*

El Juez Asociado Sr. Todd, Jr., no intervino.