EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSE SOTO ZARAGOZA, acusado y apelante.

Núm. 14389.—*Sometido:* Junio 2, 1950.  *Resuelto:* Noviembre 10, 1950.

G. *Giménez Sicardó* y *Santos Amadeo,* abogados del apelante; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

La cuestión primordial en este recurso gira en torno a la validez del registro practicado en la persona del apelante.[1]

Conforme resulta de la prueba de cargo, el 3 de mayo de 1949, mientras un detective caminaba por la Calle Monserrate, en Santurce, vió a José Angel Santana desde una distancia de 25 pies, recostado de un automóvil con unos papeles en la mano, hablando con José Soto Zaragoza. Éste se hallaba sentado en el asiento delantero, en la derecha del ve-

---

[1] Dos acusados más Harry Lake Penn y José Angel Santana fueron absueltos, como más adelante se verá.

hículo y su compañero, Harry Lake Penn, a su izquierda, frente al volante. Cuando el detective estaba como a cinco pies de ellos, notó que Soto Zaragoza se puso nervioso y refiriéndose al detective, dijo a su interlocutor: "¡Mira a Virella!" Inmediatamente Santana trató de destruir una lista y guardó en el bolsillos los papeles que tenía en la mano; pero el detective avanzó, le quitó la lista y le ocupó otros papeles y la cantidad de $38.45. Hecho esto, requirió insistentemente a Soto Zaragoza para que bajara del automóvil a fin de registrarlo a lo cual rehusaba. Entonces Lake Penn bajó del automóvil, se unió al grupo e hizo una señal a Santana para que huyera, lo que impidió el detective agarrando a Santana por los brazos. En esos momentos se desmontó Soto Zaragoza y sacando del bolsillo unos papeles, los pasó a Lake Penn, quien los tiró al suelo, recogiéndolos el detective, quien les dijo: "Ustedes están arrestados, ¿van a ir o no van a ir?" Obedeciendo la orden, todos abordaron el vehículo dirigiéndose al cuartel de la policía. Allí el detective los registró y ocupó a Soto Zaragoza un pedacito de papel, aproximadamente de dos pulgadas de largo por una de ancho en el que únicamente aparecían los siguientes números: "676= 2.50, 732=2.50".

Según la versión de la defensa, cuando a requerimiento del detective, Soto Zaragoza bajó del automóvil en la Calle Monserrate para ser registrado, se sacó los bolsillos sin que apareciera evidencia alguna para que pudiera incriminarlo. Ello no obstante, el detective procedió al arresto de todos formulándose contra ellos una acusación por infracción a la sección 4 de la Ley 220 de 1948.(2)

---

(2) "Sección 4.—Toda persona que fuere sorprendida portando o conduciendo o que tuviera en su poder en cualquier concepto cualquier papeleta, billete, *ticket*, libreta, lista de números o letras, boletos o implementos que pudieran usarse para los juegos ilegales de la 'Bolita', 'Boli-pool', combinaciones relacionadas con los 'Pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas, y toda persona que poseyere, vendiere, o en cualquier forma transportare éstos o cualesquiera otros análogos que se pudieren utilizar o usar en dichos juegos ilícitos, o conectados con la

Oportunamente los acusados presentaron una moción solicitando la supresión de la evidencia documental obtenida en la forma indicada y siendo denegada, en el acto del juicio se opusieron a su admisión por los mismos fundamentos. Con la oposición de los acusados, se admitió la evidencia y finalmente la corte declaró que el único documento conectado con el juego de la bolita era el que antes hemos descrito. (³) En consecuencia, declaró culpable a Soto Zaragoza, lo sentenció a un año de cárcel y absolvió a los otros dos acusados.

No habiéndose alegado reincidencia, el supuesto delito, en conformidad con la sección 4 que se alegó infringida, era un misdemeanor. Consecuentemente, no estando el detective provisto de una orden de arresto, sólo podía detener al apelante, en el caso de que hubiera cometido o intentado cometer un delito en su presencia. (⁴) Pero ya he-

práctica de los mismos, incurrirá en delito público y será arrestada inmediatamente, dándose traslado del caso sin demora al Fiscal del Distrito Judicial con jurisdicción, quien formulará la correspondiente acusación, y convicta que fuere dicha persona, será castigada con pena de cárcel que no será menor de seis (6) meses ni mayor de dos (2) años; y por la segunda y subsiguientes infracciones será castigada con pena de presidio no menor de un (1) ni mayor de diez (10) años; *Disponiéndose,* que todos los juicios que se celebren por infracciones a las disposiciones de esta Ley, serán vistos en las Cortes de Distrito por tribunal de derecho exclusivamente, y por la presente se ordena a los jueces de las cortes de distrito de Puerto Rico que den preferente atención al señalamiento de todos los casos por violación a cualquiera de las disposiciones de esta Ley."

(³) El Juez que entendió de la moción de supresión no fué el que conoció del caso en sus méritos.

(⁴) El artículo 116 del Código de Enjuiciamiento Criminal prescribe:

"Un oficial de orden público puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin, o puede, sin una orden de arresto, detener a una persona:

"1. Por un delito público cometido, o que se ha intentado cometer, en su presencia.

"2. Cuando la persona arrestada ha cometido *'felony'* (delito muy grave), aunque no haya sido en su presencia.

"3. Cuando en realidad se ha cometido *'felony'* (delito muy grave), y él tiene motivos racionales para creer que la persona arrestada lo ha cometido.

"4. En virtud de denuncia fundada en motivos racionales, de la perpetración de un *'felony'* (delito muy grave) por la persona arrestada.

"5. Por la noche, cuando haya motivos racionales para creer que la persona arrestada ha cometido un *'felony'* (delito muy grave)."

mos apuntado que cuando el detective ocupó a Santana los documentos que luego resultaron no estar conectados con el juego de la bolita, el apelante se hallaba sentado en el automóvil sin que aparentemente realizara acto alguno que no fuera sostener una conversación con Santana. En tales circunstancias, el detective carecía de autoridad para arrestarlo. No existiendo un arresto legal, el registro practicado a Soto Zaragoza en el cuartel como consecuencia de tal arresto, fué ilegal, *United States* v. *Di Re*, 332 U. S. 581, y la evidencia obtenida mediante ese registro fué ilegalmente obtenida y no podía servir de base a la convicción del apelante.

No está en lo cierto el juez sentenciador cuando sostiene que el registro fué legal porque el propio apelante voluntariamente suministró la evidencia que lo incriminó. Al hacer esta aseveración, pierde de vista el Juez, que de acuerdo con la prueba de cargo, los únicos documentos que se ocuparon a Soto Zaragoza, en la Calle Monserrate fueron aquellos que pasó a Lake Penn, y que el Juez sentenciador decidió que no estaban conectados con el juego de la bolita. Y según la versión del apelante, cuando él se sacó los bolsillos en la Calle Monserrate obedeciendo la orden de bajar del automóvil para ser registrado, nada tenía en ellos conectado con el referido juego. Fué en el cuartel a virtud del arresto ilegal practicado en la Calle Monserrate, donde según el detective le ocupó la prueba que sirvió de base a la convicción.

*Procede revocar la sentencia y absolver al acusado.*

El Juez Asociado Sr. Snyder no intervino.