EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ LUIS LÓPEZ RIVERA, acusado y apelante.

*Números:* CR-63-56, 57, 58      *Resueltos:* 21 de enero de 1964

*J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo. El apelante no compareció.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El apelante fue sentenciado por la Sala de San Juan del Tribunal Superior en 28 de noviembre de 1962 a una pena indeterminada de cinco a diez años de presidio en cada uno de dos cargos por violación a la Ley de Narcóticos de Puerto Rico. En igual fecha y en el mismo juicio, fue sentenciado por la propia Sala del Tribunal Superior al pago de una multa de $5 por violación a la Ordenanza Núm. 18 del Gobierno de la Capital, de 6 de septiembre de 1949.

En los procedimientos ante la Sala de instancia el apelante estuvo aptamente defendido por un letrado de la Sociedad para Asistencia Legal. No conforme el convicto con las sentencias condenatorias, su abogado interpuso recursos de apelación.

Surge del expediente de este Tribunal que en 24 de junio de 1963 se radicó un escrito sobre renuncia de representación de abogado, firmado por un miembro de la Asistencia Legal distinto al que defendió al apelante en el juicio en el que expuso que había leído la transcripción de evidencia y no había encontrado errores que levantar en apelación y solicitó que se le relevara de la representación legal del caso ante nos. A esta moción el Juez Asociado de turno de este Tribunal, compañero Ramírez Bages, proveyó concediéndole al apelante un término de 30 días a vencer el 16 de septiembre de 1963 para radicar alegato, si lo estimaba conveniente. El apelante, que se halla preso, no presentó alegato. Como consecuencia de

ello el expediente tampoco contenía informe del Procurador General, quedando el recurso sometido para su disposición final.

Ante el hecho de que este acusado indigente no ha sido defendido ante nos por la representación legal que tenía designada, consideramos apropiado, siendo un caso penal, hacer un examen completo del récord. Lo hemos hecho en otras ocasiones parecidas. De ese examen del récord, considerando el Art. 178 del Código de Enjuiciamiento Criminal y otras cuestiones procesales que se discutirán en el curso de esta opinión, tuvimos serias dudas en cuanto a la corrección en derecho de las sentencias condenatorias. (¹)

Después de convicto por un jurado en los casos de infracción a la Ley de Narcóticos y de convicto por violación de la ordenanza municipal por el Juez como tribunal de derecho, el apelante interpuso mociones de nuevo juicio fechadas 2 y 21 de noviembre de 1962 en que, entre otros planteamientos, levantó la cuestión de que correspondía al jurado y no al Juez resolver si el acusado había infringido o no la ordenanza municipal y la determinación de su inocencia o culpabilidad en lo que a este delito respecta; que correspondía al jurado (como consecuencia de lo anterior) darle o no darle consideración, como cuestión de hecho, a la evidencia material admitida en los casos de drogas; así como que la acusación en cuanto a la ordenanza municipal no imputaba la comisión de delito público.

---

(¹) Aunque no surge de idéntica situación, cabe anotar que el Tribunal Supremo de Estados Unidos, en *Douglas* v. *California,* 372 U.S. 353, decidido en 18 de marzo de 1963, determinó que la negativa de un Tribunal de Apelaciones estatal a nombrarle abogado a un apelante indigente, para que le defendiera en la única apelación que tenía *como cuestión de derecho* en las cortes del Estado, infringía la Enmienda XIV de la Constitución y revocó la sentencia en los méritos dictada sin el beneficio, en apelación, de abogado. En asuntos criminales este Tribunal ha dado protección a los apelantes que carecen de abogado, sujeto a la cooperación que prestan unos u otros miembros del foro. Tal vez sería apropiado considerar la idea de una defensa legal estable adscrita al Tribunal como parte de su función institucional.

A la luz del examen del récord y de las normas de derecho aplicables al caso según se expondrán, nos pareció que las cuestiones levantadas por el acusado en sus mociones de nuevo juicio declaradas sin lugar de plano, levantadas también en el curso del proceso, no eran frívolas, y pudieron haber tenido más detenida consideración por parte de la Sala sentenciadora. Ante la situación expuesta consideramos apropiado y necesario que el Procurador General se manifestara sobre los planteamientos del apelante en dichas mociones, ya que de tener razón, obtendría de este Tribunal el nuevo juicio que no obtuvo de la Sala sentenciadora.

El Procurador General ha radicado un Informe y está de acuerdo en que la acusación por infracción de la ordenanza municipal no imputaba delito, y como así nos pareció que debía ser, está de acuerdo también en que el acusado debió ser juzgado por el jurado por esta infracción, y no por el Juez, y se allana a que se revoque la sentencia que declaró convicto al apelante de haber violado la Ordenanza Núm. 18 de la Capital.

█ La ordenanza aludida dispone en su Art. 2 lo siguiente: "Se prohibe detenerse en las calles, avenidas o aceras, formando grupos de mas de tres personas que intercepten o molesten el tránsito de los demás, así como llevar bultos o paquetes que estorben otros caminantes" . . . . La acusación imputa que le apelante en o para el 15 de marzo de 1962, . . . ilegal, voluntaria y maliciosamente . . . se encontraba formando grupo en la acera en unión a otros individuos que se dieron a la fuga, estorbando de esta manera el libre tránsito de las personas.

No cabe la menor duda que la acusación es defectuosa. Sin embargo, nos parece que el defecto no llega al extremo fatal de en forma alguna no imputarse delito, ya que la alegación de formar grupo con *otros individuos* implícitamente puede contener el hecho de más de tres personas. De todos modos, el acusado pudo haber solicitado una especificación de

particulares sobre este extremo y exigir del Ministerio Público que puntualizara el número de personas presentes, así como la manera en que interceptaron o molestaron el tránsito de los demás.

En cuanto a que correspondía al jurado determinar la inocencia o culpabilidad del acusado por la infracción de la ordenanza de la Capital, en las circunstancias de este caso esa era la situación de derecho correcta. Disponía el Art. 178 del Código de Enjuiciamiento Criminal de la manera siguiente: "Cuestiones de hecho en casos de delito grave (*felony*) y en casos de *misdemeanor* siempre que originariamente se presentare la acusación en la corte de distrito [Superior] y fueren también de la competencia de las cortes municipales, [de Distrito] habrán de ser juzgadas por el jurado, cuando el acusado o acusados o cualquiera de ellos, lo pidiere. Dicha elección deberá notificarse al tribunal cuando se haga la primera lectura de la *lista* que contenga la causa. Si se hiciere dicha elección, ésta *se hará constar* en el récord; si no se hiciere, *se hará constar* así en dicho récord, y se considerará que el derecho a ser juzgado por jurado ha prescrito y la causa será juzgada por el tribunal. Sin embargo, si se alegan justas razones, el tribunal podrá conceder el juicio por jurado en cualquier fecha subsiguiente a la lectura de la lista o relación de causas. (²)

Señala el récord que al comenzarse los procedimientos y después de constituido el jurado el Secretario leyó las acusaciones graves por la Ley de Narcóticos y ocurrió lo siguiente:

"Hon. JUEZ:

¿Alegación en el primer cargo?

---

(²) En cuanto a los casos graves el expediente demuestra que en el acto de la lectura de la acusación al acusado se le designó abogado a los efectos de dicho acto, y solicitó juicio por tribunal de derecho. Al comenzar los casos el Juez ordenó se llamara un jurado. En cuanto al caso menos grave, el expediente nada revela en uno u otro sentido, sobre el particular, en la lectura de la acusación.

Lic. FIGUEROA VÉLEZ:

Inocente en ambos cargos, Vuestro Honor.

Hon. Fiscal ORTIZ JUAN:

Hay un *misdemeanor*, señor juez.

Hon. JUEZ:

Sí, hay el M-62-727, Infracción a la Ordenanza Municipal, colega.

Lic. FIGUEROA VÉLEZ:

La damos por leída. Igualmente hacemos alegación de inocente.

Hon. JUEZ:

Llámese la prueba y juraméntese." (Continúa el juicio.)

Nada hay en lo anteriormente transcrito que demuestre que el acusado sometió la infracción de la ordenanza por separado a tribunal de derecho, ni que implique que el Fiscal así lo intentara al pedir que se incluyera el caso de la ordenanza para su enjuiciamiento ya constituido y presente el jurado que habría de juzgar los casos graves. Por el contrario, todo lo anterior tiende a indicar, y el acusado pudo así entenderlo por la expresión del Ministerio Público, que todos los delitos se estarían viendo ante jurado, tratándose de un proceso menos grave perseguido originalmente ante el Tribunal Superior mediante acusación, para conocer del cual el Tribunal de Distrito tenía también competencia. Al no ser necesario, a partir de la vigencia de la Sec. 11 de la Carta de Derechos de nuestra Constitución el que un acusado en casos graves solicite juicio por jurado para que lo tenga, si bien el derecho sigue siendo renunciable, cf. *Pueblo* v. *Figueroa*, 77 D.P.R. 188 (1954), en las circunstancias señaladas por el récord en que no existía una renuncia expresa y en que el Fiscal solicitó incluir el delito menos grave para su enjuiciamiento en el mismo proceso de los delitos graves ya constituido el jurado se requería, por lo menos, que afirmativamente manifestara su intención, o la Sala así lo advirtiera, de que dicho delito menos grave sería decidido por tribunal de derecho. El récord señala igualmente que antes de

que el proceso terminara en definitiva, el acusado invocó en más de una ocasión el derecho a que el jurado decidiera sobre si él estaba cometiendo o no alguna infracción de la ordenanza. (³)

■ El Art. 178 del Código de Enjuiciamiento Criminal fue suplantado por la vigente Regla 111 de las de Procedimiento Criminal de 1963. Esta regla dispone que: "Las cuestiones de hecho en casos de delito grave (*felony*) y, salvo lo dispuesto en leyes especiales, en casos de delito menos grave (*misdemeanor*), siempre que originalmente se presentare la acusación en el Tribunal Superior y fueren también de la jurisdicción del Tribunal de Distrito, habrán de ser juzgadas por el jurado a menos que el acusado renunciare *expresa y personalmente* al derecho a juicio por jurado. El Tribunal podrá conceder el juicio por jurado en cualquier fecha posterior a la lectura de la acusación." Habiéndose aprobado dicha Regla estando aún pendiente este caso en apelación, la misma puede tomarse en cuenta en todo lo más que ella favorece al acusado, respecto al hecho de si efectivamente él renunció o no el derecho a un juicio por jurado en el delito menor. Véase Regla 2 de 1963; cf. *Petrovich* v. *Srio. de Hacienda*, 79 D.P.R. 250 (1956), pág. 259. (⁴)

■ Bajo el Art. 178 del Código de Enjuiciamiento Criminal y la Regla 111 aludidos, ante las constancias del récord el acusado tenía derecho a que el jurado, y no el Juez, determinara si él había realizado o no los hechos prohibidos por la ordenanza y si era culpable o inocente de su infracción. La culpabilidad declarada por el Juez en ese caso deberá quedar sin efecto, revocada la sentencia en virtud de esa

(³) T.E. págs. 69, 70, 71, 77 y 78, antes de someterse .el caso al jurado; y a las págs. 100, 101, 102, y 103, excepcionando la defensa las instrucciones dadas al jurado.

(⁴) Como podrá observarse, esta Regla deja sin efecto en parte lo decidido en *Pueblo* v. *Figueroa*, supra; en *Pueblo* v. *Tosado*, 77 D.P.R. 434 (1954) y en *Pueblo* v. *Santiago*, 78 D.P.R. 69 (1955).

convicción, y se le concederá al apelante un nuevo juicio por este delito. (5)

Aun cuando se allana a la revocación de la sentencia por la ordenanza, sostiene el Procurador General que deben confirmarse las impuestas en los casos graves por la posesión de marihuana y de heroína. El principal argumento es que la validez del arresto y del registro del apelante, y en su consecuencia la admisibilidad como prueba de las drogas obtenidas mediante dicho registro, eran cuestiones legales de la competencia del juez, no para ser determinadas por el jurado. Básicamente ello es así y es correcta la posición asumida. No obstante, el problema a que tenemos que enfrentarnos en este caso requiere, sin embargo, un análisis propio a la luz de la situación y demás circunstancias que presenta el récord, que no dejan de ser bastante peculiares, de los hechos ante nos. Veamos:

El único testimonio que presentó el Ministerio Público en cuanto a la violación de la ordenanza y del hecho del arresto del apelante y el subsiguiente registro, fue la declaración del policía Pascual Francisco Sánchez. Dijo que a las doce y media *de la noche* del 15 de marzo de 1962 hacía servicio de vigilancia en un auto de patrulla acompañado de otro agente. El testigo conducía el vehículo. Mientras patrullaba por la calle San Agustín de Puerta de Tierra a esa hora, el récord demuestra lo siguiente: (A preguntas del Fiscal)

"P—¿Conoce a este acusado José—Luis López Rivera?

R—Sí, señor.

P—¿Lo vio ese día?

R—El acusado estaba parado frente al·bar 'Son de la Loma' en la calle San Agustín.

P—¿Solo o acompañado?

R—Había un grupo . . .

---

(5) Observamos del récord que en momento alguno se presentó en evidencia ante la Sala la Ordenanza Núm. 18. *Matos* v. *P.R. Ry. & P. Co.*, 58 D.P.R. 160, 163 (1941.) Cf. *Pueblo* v. *Solís*, 56 D.P.R. 284, 285 (1940); *Pueblo* v. *Garzot*, 24 D.P.R. 231, 233 (1916); *Pueblo* v. *Suárez*, 23 D.P.R. 243 (1915); *Pueblo* v. *Nochera*, 23 D.P.R. 605, 608 (1916).

P—¿Grupo de cuántos?

R—A lo sumo habían cinco o seis personas.

P—¿Qué hacían?

R—Ellos estaban parados en la acera; estaban conversando allí.

P—¿En qué forma?

R—Digo, en una forma que ocupaban la acera.

P—¿Qué parte de la acera ocupaban?

R—Todo el pavimento que comprende la acera.

P—¿Había otras personas en la calle a esa hora?

Lic. FIGUEROA VÉLEZ:

Que no sea sugestivo, Señor juez.

Hon. JUEZ:

Sí. Con lugar.

Hon. Fiscal ORTIZ JUAN:

¿Quien más, si alguien, había por allí?

Testigo:

No vi á nadie mas sino el grupo de ellos.

P—No digo en grupo sino en la calle.

Testigo:

Digo, en el grupo en si estaban ellos solos; entonces por allí pasaban personas; había gente pasando.

P—¿Usted dice que por allí pasaba mas gente?

R—Sí, señor.

P—Y, ¿para qué sitio? . .

R—Tenían que tirarse a la calle porque no había sitio; tenía que tirarse a la calle por el grupo de ellos.

P—¿Qué les impedía pasar por la acera? ¿Qué, si algo?

R—El grupo.

P—Con motivo de eso que usted vio y de ese grupo en la acera que no dejaba pasar la gente, les impedía pasar, ¿qué hizo usted, si algo?

R—Yo traté de arrestar al grupo, a todos los integrantes del grupo, con el compañero Gil Agosto.

P—¿Qué sucedió cuando usted trató de arrestarlos?

R—Cuando yo traté de arrestarlos, ya que yo iba guiando por el lado donde estaba el grupo, yo me apeé, el compañero se apeó y ellos se fueron a correr; entonces pudimos agarrar nada más que al caballero, que fue el último que trató . . .

P—Para los fines de récord, señala al acusado. Una vez que usted lo arrestó, perdón, que lo agarró, ¿qué hizo?

R—Bueno, procedimos a registrarlo.

P—En el registro que usted hizo de esa persona . . . ¿Por qué lo registró usted?

R—Porque tenía que conducirlo al cuartel y lo había arrestado por el delito de haber estado formando grupo, no lo iba a llevar sin registrar.

P—Después de arrestarlo, ¿el registro que usted le hizo produjo algo?

R—Sí, señor; se le ocupó sobre su persona, en el bolsillo izquierdo ocupé . . .

P—¿En el bolsillo izquierdo de qué?

R—De él, de la camisa.

P—¿En el bolsillo izquierdo de la camisa ocupó qué?

R—Encontré dieciseis cigarrillos de fabricación doméstica, chiquitos, envueltos en un papel de regalo; además, un papelito color de rosa que, por la experiencia que he tenido, parecía supuesta heroina."

(La prueba química demostró que en efecto se trataba de cigarrillos de marihuana y de heroina, material éste que fue admitido en evidencia por el Juez y pasó al jurado).

Veamos en parte también, otros detalles que surgen del contrainterrogatorio del propio testigo:

(Defensa)

"P—Oiga, Don Pascual, ¿cuántas personas usted contó allí?

R—Como dije antes, de cinco a seis había.

P—¿Qué hora de la noche era esa?

R—A las doce y media de la noche.

P—Y, ¿usted le dice a las damas y caballeros del jurado que a las doce y media de la noche iba pasando mucha gente por allí y se tenía que tirar de la acera a la calle?

R—Bueno, porque la calle San Agustín es una calle muy concurrida.

P—A las doce y media de la noche, ¿cuántas personas pasaron por allí que se tuvieran que tirar a la calle?

R—Aquello es bastante concurrido.

P—Señor, contésteme la pregunta: ¿Cuántas personas pasaron por allí que se tuvieran que tirar a la calle?

R—Bueno, en el momento en que yo estaba por allí se tiraron bastantes.

P—¿Como cuántas?

R—Yo no pude ponerme a contarlas.

.   .   .   .   .   .   .   .

P—¿Hasta dónde usted corrió a este señor? [Se refiere al acusado]

R—Una distancia bastante cerca, no muy lejos.

P—¿Entonces él no corrió?

R—Si lo agarramos a él.

P—La pregunta es si él corrió o no corrió?

R—Trató de correr.

P—Mire, 'trató de correr', no; si corrió o no corrió.

R—No llegó a correr.

.   .   .   .   .   .   .   .

P—Pero, usted me declara que iba al lado del volante y que quedaba al lado del grupo ese.

R—Pero si muchas veces no nos dejan, que se quitan de allí al ver la patrulla, pues, se van; no nos van a dar tiempo ni para pararnos para agarrarlos.

.   .   .   .   .   .   .   .

P—¿Entonces esa Calle San Agustín es bastante larga?

R—Sí, señor.

P—¿Por dónde fue que ustedes doblaron para entrar a esa?

R—Nosotros subíamos por la calle Pelayo y doblamos hacia la derecha.

P—Ahora relátele a las damas y caballeros del jurado cuántas esquinas hay en la calle Pelayo y la calle donde estaba ese grupo.

R—Ninguna.

P—¿No hay ninguna?

R—No, señor.

P—¿Y, entonces, es la misma intersección?

R—Sí.

.   .   .   .   .   .   .   .

P—¿Y este señor que tenía la heroina y la marihuana se quedó parado allí?

R—No, señor.

P—¿Eso no fue lo que usted le dijo a las damas y caballeros del jurado, que trató de correr y usted lo agarró?

R—Eso fue lo que le dije.

P—Por eso, ¿no corrió?

R—Si lo agarramos a él.

P—Por eso. Pero él no corrió; este fue el único que se quedó, el que tenía eso encima, que fue el que se quedó allí para que usted lo arrestara.

R—Yo no he dicho que él se quedó.

P—Pero lo cogió allí, allí mismito donde estaba parado?

R—No, no; no dije eso tampoco. Un poquito más alante dije yo.

P—¿Cuántos pasos mas alante?

R—Mas o menos como diez o doce pasos mas alante.

P—Diez o doce pasos más alante.

P— . . . . .

R—Pies.

.        .        .        .        .        .        .        .

Testigo:

R—Cuando nos apeamos que ellos iban a correr, que fueron a correr y entonces él trató de correr, yo me ocupé de agarrar al que era el más cerca que tenía. Lo que hizo el compañero yo no le puedo decir.

.        .        .        .        .        .        .        .

P—Las personas que usted dice que pasaban en ese momento, ¿cómo eran, eran hombres, eran niños, eran mujeres? ¿Cómo eran esas personas?

R—Aquella calle es bastante concurrida; allí pasan hombres y mujeres.

P—No me venga con eso de la 'calle concurrida' . . .

Hon. JUEZ:

Hombres y mujeres, adelante.

P—Alguna de esas personas se les querelló a ustedes de que no podía pasar por la acera?

R—Personalmente a mí no.

P—Desde el momento en que usted ve ese grupo, que usted sube por la calle Pelayo, hasta el momento en que usted llega

allí, se baja de la guagua y arresta a este señor, ¿cuántos segundos o minutos pasaron allí?

R—Fue bastante corto el tiempo.

P—¿En ese tiempo usted ve varios hombres y varias mujeres que pasan y se tienen que tirar de la acera a la calle?

R—Le dije antes que esa calle es concurridísima de día y de noche, a cualquier hora.

P—¿A las doce de la noche? ¿Qué había, fiestas patronales?

R—No; allí lo que había era un bar, lo que había era un baile en aquel bar." (6)

▆▆▆ Disponía el Art. 116 del Código de Enjuiciamiento Criminal que un oficial del orden público podía hacer un arresto en cumplimiento de una orden que le hubiere sido entregada con tal fin, y sin una orden de arresto podía detener a una persona: "(1) Por un delito público *cometido*, o que se ha *intentado cometer*, en su presencia. (2) Cuando la persona arrestada ha cometido 'felony' (delito muy grave), aunque no haya sido en su presencia. (3) Cuando en realidad se ha cometido 'felony' (delito muy grave), y él tiene motivos racionales para creer que la persona arrestada lo ha cometido. (4) En virtud de denuncia fundada en motivos racionales de la perpetración de un 'felony' (delito muy grave) por la persona arrestada. (5) *Por la noche*, cuando haya motivos racionales para creer que la persona arrestada ha cometido un 'felony' (delito muy grave)."

Tanto de la letra misma del Art. 116, particularmente de sus incisos 1 y 5, como a tenor de la doctrina vigente bien conocida, basta repetir que el policía Sánchez pudo hacer un arresto legal del apelante a esa hora en el caso menos grave de la infracción de la ordenanza, sin una previa orden, sólo y únicamente si dicha infracción *se cometía* o *se intentaba cometer en su presencia*. Cf. *Pueblo* v. *Ramos*, 18 D.P.R. 993,

---

(6) En vista de la disposición que daremos a los recursos, nos abstenemos de evaluar en manera alguna la anterior prueba. Se ha reseñado para dar a conocer, a base de la propia evidencia del Pueblo, la manera y circunstancias en que se realizó el arresto y el registro del apelante sin orden judicial previa.

806

pág. 998 (1912); *Pueblo* v. *Soto,* 71 D.P.R. 830 (1950), pág. 832; *Pueblo* v. *Decós,* 62 D.P.R. 148 (1943), pág. 150; *Pueblo* v. *Irizarry,* 42 D.P.R. 679 (1931), pág. 681. Cf. *Pueblo* v. *Gil de Lamadrid,* 70 D.P.R. 918 (1950), pág. 923; y véase discusión amplia del problema legal en *Pueblo* v. *Soto,* 77 D.P.R. 206 (Belaval) (1954), págs. 210 y sgtes.; y también la amplia exposición en *Pueblo* v. *Santiago,* 78 D.P.R. 659 (Belaval) (1955), págs. 665 y sgtes.; *Pueblo* v. *Colón,* 68 D.P.R. 893 (1948), pág. 896; *Pueblo* v. *Márquez,* 36 D.P.R. 265 (1927), pág. 269; *Pueblo* v. *Santos,* 71 D.P.R. 310 (1950), pág. 315. Todos los demás casos que autoriza el Art. 116, en que entra en juego para el arresto sin orden una creencia racional de la comisión de delito son situaciones de delito grave *(felony).* No son aplicables por lo tanto en la consideración de este caso, las normas judiciales en sus varias modalidades y aspectos que rigen y sostienen la validez de un arresto sin orden a base de una creencia racional de la comisión de delito, aun cuando éste no se hubiere cometido por la persona que sufrió el arresto, o aun cuando fuere exonerada o absuelta del mismo. [7]

---

[7] Conviene aclarar que la situación aquí ha variado bajo las Reglas de Procedimiento Criminal de 1963. En la Regla 11 se dispone que "un funcionario del orden público podrá hacer un arresto sin la orden correspondiente: (a) *Cuando tuviere motivos fundados* para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. . . . (b) Cuando la persona arrestada hubiese cometido un delito grave *(felony),* aunque no en su presencia. (c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave *(felony),* independientemente de que dicho delito se hubiera cometido o no en realidad." Las anteriores disposiciones de la Regla 11 son idénticas al Art. 836 del Código Penal de California, de donde copiamos el Art. 116 del Código de Enjuiciamiento nuestro, según dicho Art. 836 fue promulgado de nuevo por California en el año 1957. Bajo la Regla 11 basta con que el funcionario *tenga motivos fundados para creer* que la persona ha cometido un delito *en su presencia,* mientras que bajo el Art. 116 se requiere que la persona cometiera o intentara cometer un delito en su presencia. Véanse: casos citados; *Miller* v. *Glass,* 44 C.2d 359, 282 P.2d 501; *People* v. *Perry,* 180 P.2d 465, 79 C.A.2d 906; *Collins* v. *Owens,* 176 P.2d 372, 77 C.A.2d 713; *Ware* v. *Dunn,* 183 P.2d 128, 80 C.A.2d 936; *Coverstone* v. *Davis,* 39 C.2d

En consecuencia del arresto del apelante esa noche y del registro de su persona una vez arrestado se produjo la evidencia que dio lugar a la iniciación de los procesos graves y a la eventual convicción por los mismos. Existe tal nexo directo entre el hecho de si el apelante al momento de ser arrestado cometía o no delito público menos grave o lo intentaba cometer, y el hecho final de su convicción por drogas,—por cuanto la validez del registro que aportó la única evidencia para estas acusaciones y convicción dependía de la validez del arresto, y éste a su vez del hecho de que *en presencia* del agente el apelante *cometiera o intentara cometer* delito menor,—que no es posible en sus consecuencias de derecho desvincular unos hechos de los otros ni establecer una completa separación en ley entre la convicción por drogas y el hecho de la infracción de la ordenanza.

■ El propio Magistrado sentenciador llegó a captar correctamente la situación durante el proceso. El récord señala que al terminar la prueba del Pueblo—en cuanto a la ocurrencia de los hechos fue únicamente la declaración del policía Sánchez, siendo la otra la pericial química—el Fiscal ofreció las drogas en evidencia para cerrar su caso. Se opuso el acusado y el Magistrado se negó a admitirlas en ese momento hasta después que oyera la prueba de defensa en el caso. Nos parece claro y también lógico que el Magistrado entendía, aun cuando se trataba de un incidente sobre admisión de evidencia, que si él habría de resolver para la convicción o inocencia en el caso menos grave que el apelante no realizó actos que infringieran la ordenanza lo que implicaría

315, 239 P.2d 876; *Jackson* v. *Superior Court*, 219 P.2d 879, 98 C.A.2d 183; *People* v. *Privett*, 55 C.2d 698, 361 P.2d 602.

Puede advertirse que en California está en vigor una disposición, adicionada en 1905 a su Art. 840 al efecto de que si es de noche, para el arresto sin orden de un delito menos grave ha de cometerse en presencia del agente. West's *Anno. Penal Code*, Vol. 49, pág. 140. El Art. 120 nuestro, igual al 840 antes de la enmienda de 1905, no ha sido alterado. Eso explica ciertas expresiones recientes en la jurisprudencia de California, a pesar de la revisión del 836 en el año 1957.

que no cometió delito *en presencia* del policía, se hallaría entonces ante la situación de un arresto y registro ilegal que no le autorizaría a admitir la prueba en los casos graves, acorde con nuestras decisiones y doctrina, y ante el mandato expreso de la Sec. 10 de nuestra Carta de Derechos:—"Evidencia obtenida en violación de esta sección será inadmisible en los tribunales." Cf. *Wong Sun* v. *United States*, 371 U.S. 471; *Pueblo* v. *Soto; Pueblo* v. *Decós*, supra; *Ríos* v. *United States*, 364 U.S. 253. Oída en su totalidad la prueba de ambas partes el Magistrado admitió la evidencia al concluir que el apelante había infringido la ordenanza y efectivamente, lo declaró culpable de ese delito. (⁸)

La prueba de la defensa francamente controvirtió la de cargo en cuanto a los hechos referentes al arresto y a la violación menos grave. Declaró un testigo que él vio cuando el policía Sánchez arrestó al acusado; que eran como las diez de la noche; que con el apelante no había persona alguna; que no vio que nadie corriera de aquel sitio; que el apelante iba caminando por la acera cuando el guardia lo metió en la ronda; que no lo vio correr; que en aquel momento el acusado no escandalizaba ni hacía nada.

Aunque no ante situación idéntica, pero que guarda bastante analogía, la Corte Suprema de California aplicando su Art. 836 en *People* v. *Kilvington,* 104 Cal. 86, decidido en 1894 antes de que diéramos traslado de dicho artículo como el 116 de nuestro Código, expuso como doctrina sentada que la cuestión de la existencia de caüsa probable o de motivos razonables para un arresto sin orden era una de derecho, a menos que la evidencia de donde surgiera la causa probable o motivo razonable *fuera conflictiva,* en cuyo caso era deber de la corte instruir al jurado qué hechos, de pro-

---

(⁸) Reiterando la defensa su oposición a la admisión de la prueba:
"Hon. Juez:
   Sin lugar ahora, después de oida la prueba de la defensa. Se admiten los ofrecimientos y se marcan. . . ." (Récord, pág. 77.)

barse, constituirían causa probable o motivo racional, y someterle al jurado el asunto en cuanto a tales hechos. *People* v. *Meléndrez*, 129 Cal. 549, 62 Pac. 109, pág. 110; Cf. *People* v. *Silvestri* (Cal.), 309 P.2d 871, pág. 873, en que también se trataba de evidencia no controvertida en cuanto a la causa probable para el arresto. (⁹) El principio de que debe pasarse al jurado el hecho de la causa probable o del motivo racional para un arresto sin orden cuando la evidencia sobre el particular no es indisputable y sí conflictiva, en que pueden estar envueltos elementos de credibilidad, es también doctrina nuestra. Véase: *Pueblo* v. *Santiago*, antes citado, 78 D.P.R. a la pág. 665. Si el criterio expuesto se aplica al hecho de la existencia de un motivo o creencia razonable para un arresto, con igual razón debe aplicarse ante evidencia conflictiva como la del caso de autos, al hecho más específico de si se cometían actos delictivos, y éstos en presencia de un funcionario, que justificaran un arresto de noche sin orden. Más aún, cuando ya se ha dicho que en las circunstancias particulares de este caso era también el jurado quien debió determinar si el apelante había infringido o no la ordenanza y condenarlo o absolverlo de ese delito.

La única prueba del Pueblo para los casos graves de *posesión* de drogas fue la presentación de las drogas mismas, fruto del arresto y registro de la persona del apelante. Excepto que no se tratara de drogas, en cuyo caso no habría existido proceso en su origen, es obvio que constituía una defensa fundamental del acusado en los casos graves, sino la única, el hecho de que él no cometía la infracción menos grave ya que de prevalecer tal defensa, ello haría desaparecer en ley la prueba del Pueblo.

---

(⁹) La cuestión de si hay causa probable o existen motivos racionales para un arresto con todas sus circunstancias, incluyendo lo de credibilidad, constituye siempre una cuestión de hecho, ya sea para el juez o para el jurado. Cf. *People* v. *Miller*, 176 C.A.2d 571, 575; *People* v. *Scott* (Cal.), 339 P.2d 165; *People* v. *White* (Cal.), 324 P.2d 296, 298; *People* v. *Chatman*, 333 P.2d (Cal.) 374, 377.

■ El Art. 178 citado así como la Regla 111 de 1963 disponen que las cuestiones *de hecho* serán juzgadas por el jurado. Ciertamente competía al Juez, según correctamente apunta el Procurador General y es la norma que rige, el resolver sobre la admisión o no en evidencia de esta prueba y hacer sus propias conclusiones de hecho en cuanto a todos aquellos conducentes a determinar las circunstancias del arresto y del registro sin orden. En las circunstancias dichas, en que corresponde al jurado determinar si se realizaron o no hechos que infringían la ordenanza y declarar al apelante culpable o inocente de este delito, y en que los elementos de hechos que son ingredientes del incidente sobre admisibilidad de la evidencia son elementos de hecho de defensa, compete al jurado determinar en última instancia, bajo la instrucción pertinente del Juez, si toma o no en consideración la evidencia admitida, distinto a la instrucción dada al efecto de que no podía prescindir de ella. (T.E. pág. 89.) (10) Lo contrario, como se apunta en *People* v. *Meléndrez*, supra, equivaldría a decirle al jurado ante evidencia oída por ellos, que en efecto el apelante había cometido el delito de infringir la ordenanza.

*Por razón de lo expuesto, debiéndose revocar la sentencia por infracción a la ordenanza de la Capital, es inevitable dejar sin efecto las sentencias en los otros casos. Se devolverán*

---

(10) La situación se asemeja un tanto a la norma que aquí seguimos en el caso de las confesiones, en donde si bien es función del Juez como cuestión de derecho el admitir o no una confesión en evidencia, si la admite ante hechos controvertidos en cuanto a su voluntariedad el jurado debe pasar sobre esos hechos y aun cuando admitida, no tomarla en cuenta si concluyere que los hechos la hacen involuntaria. Similar también a la confesión en que corresponde al Pueblo el peso de demostrar la voluntariedad, las cortes de California, cuya ley positiva es igual a la nuestra, tienen bien sentado que se establece un caso prima facie de un arresto o registro ilegal o sin causa probable demostrando el acusado que se realizó sin orden, y corresponde al Fiscal el peso de la prueba para demostrar que hubo justificación para el arresto. *Badillo* v. *Superior Court*, 46 C.2d 269; *People* v. *Ferrara*, 46 C.2d 265; *People* v. *Robinson*, 333 P.2d 120; *People* v. *Carswell* (Cal.), 308 P.2d 852; *People* v. *Silvestri*, supra, Pac. 874; *People* v. *Holguin* (Cal.), 302 P.2d 635, 637.

*todos para la celebración de nuevo juicio acorde con lo expresado en esta opinión.*